

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-1994

# Trent, et al. v. Dial Medical of FL, Inc., et al.

Precedential or Non-Precedential:

Docket 92-2047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Trent, et al. v. Dial Medical of FL, Inc., et al." (1994). *1994 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 92-2047

_____


EARL TRENT, and all those similarly situated; EDWIN SNEAD,
        EXECUTOR OF THE ESTATE OF ELAINE SNEAD Intervenor-
        Plaintiff in D.C.; EDWIN SNEAD, IN HIS OWN RIGHT
        Intervenor-Plaintiff in D.C.

                            vs.

DIAL MEDICAL OF FLORIDA, INC.; COMMUNITY DIALYSIS CENTERS;

                            vs.

W. W. GRAINGER, INC.; AMERICAN MACHINE AND TOOL CO. INC. OF
        PENNSYLVANIA, a/k/a AMERICAN MACHINE AND TOOL CO.,
        INC.; BAXTER HEALTHCARE CORPORATION

        Earl Trent,

                        Appellant.

                   _____

        APPEAL FROM THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                (D.C. Civil No. 92-04493)

                   _____


                 ARGUED JULY 26, 1993

    BEFORE:  MANSMANN, GREENBERG and LEWIS, Circuit Judges.

                (Filed  August 12, 1994)

                   _____

Ronald V. Cole, Esquire (ARGUED)
Suite 2323
1601 Market Street
Philadelphia, PA  19103

Attorney for Appellant


Paul C. Quinn, Esquire (ARGUED)
Steven G. Wigrizer, Esquire
Wapner, Newman & Associates
115 South 21st Street
Philadelphia, PA  19103

Attorney for Appellee, Edwin Snead, Executor of the Estate
     of Elaine Snead and in his own right


Joseph Frontino, Esquire
Richard W. Yost, Esquire
L'Abbate & Balkan
Four Penn Center Plaza
1600 John F. Kennedy Boulevard
Suite 1401
Philadelphia, PA  19103

Attorney for Appellee, Dial Medical of Florida, Inc.


Andrew A. Chirls, Esquire (ARGUED)
Wolf, Block, Schorr & Solis-Cohen
S.E. Corner 15th & Chestnut Streets
Packard Building, 12th Floor
Philadelphia, PA  19102

Attorney for Appellee, Community Dialysis Centers


Charles T. Roessing, Esquire
White & Williams
1500 Lancaster Avenue
Suite 206
Paoli, PA  19301

Attorney for Appellee, W. W. Grainger, Inc. and American
     Machine and Tool Co., Inc. of Pennsylvania a/k/a
     American Machine and Tool Co., Inc.


_____

OPINION OF THE COURT

LEWIS, Circuit Judge.

Appellant Earl Trent challenges a district court's decision to abstain from hearing his case until a similar state court case is resolved.  We will affirm.

I.

Trent receives dialysis treatment at defendant Community Dialysis Center ("CDC") in Lansdowne, Pennsylvania. Defendant Dial Medical of Florida, Inc. ("Dial Medical") sells acid concentrate to CDC for use in dialysis treatment.  Between late 1988 and early 1992, several CDC patients, including Trent, were found to have high serum aluminum levels, which could result in aluminum poisoning.

In July, 1992, Trent filed a class action complaint in the United States District Court for the Eastern District of Pennsylvania alleging negligence against CDC and Dial Medical.[1] Specifically, Trent alleged that the elevated aluminum levels in CDC patients resulted from CDC's use of aluminum pumps to pump acid concentrate through patients as part of their dialysis treatment.  In September, 1992, he filed a "motion for class

_____

[1]. CDC apparently filed a third-party complaint against W.W. Grainger, Inc. ("Grainger"), and American Machine and Tool Co., Inc. of Pennsylvania ("American Machine"), and Dial Medical filed a third-party complaint against Baxter Healthcare Corp. ("Baxter").  Dial Medical, Grainger, and American Machine have since been dismissed from this appeal pursuant to stipulations of dismissal filed with the district court, and Baxter was not a party to this appeal.

maintenance," seeking certification of the class described in his amended complaint -- fifty-three CDC patients who have tested positive for serum aluminum levels of greater that 100 micrograms per liter (mcg/l) since January, 1990.

Shortly thereafter, Edwin Snead, who had earlier filed a similar class action complaint against CDC and its two medical directors in state court, moved to intervene in Trent's lawsuit. Snead, whose wife had died of aluminum poisoning after receiving dialysis treatment at CDC, sought in his case to represent a class comprised of all CDC patients injured by CDC's allegedly defective dialysis equipment and methods. Snead's complaint alleged negligence and outrageous conduct and included counts for wrongful death and survival.

In November 1992, the district court granted Snead's motion to intervene, denied Trent's motion for class certification and sua sponte decided to abstain from hearing the Trent case in light of the pendency of the Snead case in state court. The following order issued:

> The motion of Edwin Snead . . . to intervene as a party plaintiff is GRANTED.
>
> The motion of plaintiff Earl Trent for class certification is DENIED without prejudice.
>
> This suit is DISMISSED WITHOUT PREJUDICE. This case is to remain in status quo and the Statute of Limitations is tolled.
>
> It is further understood that all discovery and settlement discussions will continue in coordination with the action currently pending in the Delaware County Court of Common Pleas styled Snead v.

Community Dialysis Center, Inc. . . . . If intervention by the court is needed or desired, the parties may ask for assistance by either filing the appropriate motions, writing to the court or setting a telephone conference.

The parties shall keep the court advised of the status of this case and the state court action. When they are ready for trial or wish a settlement conference all that is necessary is to write directly to the court or set a telephone conference.

App. at 185-86.

Since this appeal was argued, a class has been certified in the Snead case as to duty and breach of duty. Although the time period for opting out of that class has expired, Trent has chosen not to opt out. Trent appeals the district court's decision to abstain from hearing his case.

II.

Initially we must determine whether federal appellate jurisdiction exists. The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1).[2] The inquiry into

_____

[2]. Stating that it "anticipates that discovery will reveal to a legal certainty that plaintiff will not be able to recover the jurisdictional amount of $50,000," CDC urges that the district court may not have had diversity jurisdiction over this case. CDC's brief at 12 (footnote omitted). Trent's complaint, however, alleges damages in excess of $50,000, exclusive of interest and costs. Unless it appears to a legal certainty from the facts alleged that this case does not involve potential damages on that scale, the district court had jurisdiction. Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971); 28 U.S.C. § 1332(a). Given that Trent seeks both compensatory and punitive damages, and the lack of clarity as to the extent of his injuries, if he suffered any, we cannot say with any certainty -- legal or otherwise -- at this time that his damages will amount to less than $50,000.

our jurisdiction, which we would undertake in any event but which is also the subject of a pending motion to dismiss for lack of appellate jurisdiction, is more complex due to conflicting statements in the district court's order.

That order indicates that Trent's case was dismissed without prejudice. An order dismissing a case is, of course, final and appealable. Ingersoll-Rand Fin. Corp. v. Callison, 844 F.2d 133, 134-35 & n.1 (3d Cir. 1988). Even dismissals without prejudice have been held to be final and appealable if they "end[] [the] suit so far as the District Court was concerned," United States v. Wallace & Tiernan Co., 336 U.S. 793, 794 n.1 (1949), although we have indicated that such dismissals may not constitute final orders until the party seeking relief renounces any intention to reinstate litigation. See Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991).

The court's order is not clearly a dismissal, however, for it states that the case is "to remain in status quo," "discovery and settlement discussions will continue in coordination with" the Snead case, the parties may contact the court if they desire judicial intervention, and the parties need only "write directly to the court or set a telephone conference" when they "are ready for trial or wish a settlement conference." App. at 185-86. The order thus appears to remove the case from the district court's docket of pending cases but to anticipate reactivation. See Brace v. O'Neill, 567 F.2d 237 (3d Cir. 1977). Therefore, the proper jurisdictional inquiry focusses on an interpretation of Moses H. Cone Memorial Hosp. v. Mercury Constr.

Corp., 460 U.S. 1 (1983), and other cases addressing the issue of whether a stay order is final for purposes of appeal. See Rolo v. General Development Corp., 949 F.2d 695, 700-02 (3d Cir. 1991); Schall v. Joyce, 885 F.2d 101, 104-05 (3d Cir. 1989); Commonwealth Ins. Co. v. Underwriters, Inc., 846 F.2d 196, 198 (3d Cir. 1988); Cheyney State College Faculty v. Hufstedler, 703 F.2d 732 (3d Cir. 1983).

In Moses H. Cone, the Supreme Court held that a stay grounded in the pendency of similar litigation in state court is appealable if it "effectively deprive[s] the plaintiff of its right to a federal forum because once the state court adjudicate[s] the issues in the case, a federal court would be bound to honor those determinations as res judicata." Schall, 885 F.2d at 104. Under Moses H. Cone, even if a stay order is entered with the expectation that the federal litigation will resume if the plaintiff does not obtain relief in state court, the stay decision may be appealed if "the object of the stay is to require all or an essential part of the federal suit to be litigated in a state forum." Moses H. Cone, 460 U.S. at 10 n.11.

That is precisely the effect the district court's order will have here. It is clear that the district court judge expected that Snead would resolve this case, at least in large part. A decision in Snead will constitute res judicata as to at least the two major issues (duty and breach) in Trent.[3]

_____

[3] . CDC has asserted a counterclaim against Trent in his lawsuit alleging that he has failed to pay for his dialysis treatments. Snead may not resolve this counterclaim, although, depending on the substance of Trent's defense to

Effectively requiring Trent either to wait until Snead is resolved or to remain in the Snead class deprives him of the opportunity to pursue remedies in federal court, thus constituting a requirement that "all or an essential part of the federal suit . . . be litigated in a state forum."  Moses H. Cone, 460 U.S. at 10 n.11.  Since issuing the order in question, in fact, the district court has denied as moot a motion to file a second amended complaint, thus implying that it believes it has effectively disposed of the case.

In Moses H. Cone, "[t]he Court distinguished between stay orders that `merely . . . have the practical effect of allowing a state court to be the first to rule on a common issue' (such as an `ordinary delay in the interest of docket control') and stay orders whose `sole purpose and effect . . . are precisely to surrender jurisdiction of a federal suit to a state court.'  . . .  Only the latter type of stay order is immediately appealable."  Schall, 885 F.2d at 104, quoting Moses H. Cone, 460 U.S. at 10 n.11.  CDC attempts to categorize this case as one in which the district court has issued a stay merely to afford the state court an opportunity to rule first on a common issue.  It sees this order as an attempt at docket control rather than an action which effectively dismisses Trent's case.  Thus, it argues that we lack jurisdiction.

---

it, it is conceivable that even that counterclaim may be resolved by a verdict in Snead.

Indeed, portions of the order point in the direction CDC indicates. The order provides that "the case is to remain in the status quo" and that "all discovery and settlement discussion will continue in coordination with the action currently pending in . . . Snead." App. at 185. It also instructs the parties that the judge will be amenable to intervening if the parties ask him to do so, and that they should keep him "advised of the status of this case and the state court action." Id. In the same vein, it provides that "[w]hen [the parties] are ready for trial or wish a settlement conference all that is necessary is to write directly to the court or set a telephone conference." App. at 185–86. Moreover, since entering the order, the district court judge has denied a motion to stay discovery pending this appeal, thus perhaps implying that he expects discovery to continue because the case is still pending.[4]

The order's unintended lack of clarity, which has been exacerbated by the denial of the discovery motion, does not, however, compel a conclusion that we lack appellate jurisdiction. Two relevant precedents assist in line-drawing here, and comparison with those cases provides the focus for our decision that we have appellate jurisdiction.

In Cheyney State College Faculty v. Hufstedler, supra, we examined a district court's decision to abstain from a class

_____

[4]. Of course, this could alternatively imply that the judge believes he has no jurisdiction to consider the motion to stay discovery because the case has been dismissed.

action suit alleging segregation in the Pennsylvania higher education system until the United States Department of Education had adjudicated administrative procedures regarding the allegation. We acknowledged Moses H. Cone's holding that, although a stay is not ordinarily a final decision, an appellate court may review it when it "amounts to a dismissal of the underlying suit." Cheyney, 703 F.2d at 735. We also acknowledged that "[a]n indefinite stay order that unreasonably delays a plaintiff's right to have his case heard is appealable." Id. We held, however, that "[t]he stay in this case does not have the practical effect of a dismissal. Nothing in the district court's opinion or order intimates that the stay was intended to `deep six' the suit. Plaintiffs have not been put `effectively out of court.' . . . Nor is the case `rife with special circumstances which bring it outside the general rule and so limit its precedential value as to not measurably weaken our continued aversion to piecemeal appeals.'" Id. Rather, based in large part on the district court's instruction that the parties report to it on the progress of the administrative proceedings, we were "convinced" that "this stay [was] merely a temporary suspension of proceedings." Id. at 735. Therefore, we determined that we lacked jurisdiction over an appeal from the stay order because the district court was only abstaining until the plaintiffs proceeded on the administrative level. There was no indication that the outcome of the administrative proceeding would deprive plaintiffs of their day in federal court.

Conversely, in Schall, we held that a district court's decision to stay a case pending the disposition of a state court case was appealable because: (1) there was no indication that the order was tentative (i.e., there was no basis to suppose that the district judge contemplated any reconsideration of his decision to defer to the parallel state-court suit (quoting Moses H. Cone)); (2) the district court had instructed the plaintiff to proceed in state court and then ordered the stay pending the outcome of those state court proceedings, leading us to believe that "the district court stayed the suit to relegate the plaintiff to state court rather than to exercise control over its docket"; and (3) the issues in the state court suit constituted the heart of the federal court suit, thus effectively preventing the litigation in federal court of a significant part of plaintiff's federal case. Schall, 885 F.2d at 105.

Arguably, unlike Schall, the order on appeal here indicates that the district court might reconsider whether to defer to Snead. The court's statements that it will "intervene" if asked and will set a trial date or a settlement conference upon request imply not only that it recognizes that there may be some issues remaining after Snead is disposed of, but also that it might try the case whenever the parties (apparently jointly) seek a trial date. Like Schall, however, the issues in Snead provide the central focus of this case, so the district court's order effectively prevents litigation of Trent's claims in federal court and requires him to abide by the state court decision in Snead. (Although Snead alleges more legal bases for

relief that the Trent case does, the allegations of the Trent case are subsumed within Snead.)  Unlike Cheyney, then, this stay has the practical effect of a dismissal rather than merely delaying adjudication until completion of administrative or state court proceedings.  Therefore, we conclude that, like the orders in Schall and Moses H. Cone, this stay order is immediately appealable and we may exercise jurisdiction over it.

### III.

The district court decided to defer exercising jurisdiction over this case under the "exceptional circumstances" doctrine of Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  See Ingersoll-Rand, 844 F.2d 133.  Colorado River abstention is not one of the three constitutionally- or comity-based traditional grounds for abstention.[5]  Instead, under Colorado River, even if a case (such as this one) does not fall within one of the three traditional categories,

---

[5]. The three constitutionally- or comity-based grounds for abstention are Pullman abstention, an outgrowth of Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941), which is proper when a state court determination of a question of state law might moot or change a federal constitutional issue presented in a federal court case; Burford abstention, an outgrowth of Burford v. Sun Oil Co., 319 U.S. 315 (1943), which is proper when questions of state law in which the state has expressed a desire to establish a coherent policy with respect to a matter of substantial public concern are presented; and Younger abstention, an outgrowth of Younger v. Harris, 401 U.S. 37 (1971), which is proper when federal jurisdiction has been invoked for the purpose of restraining certain state proceedings.  See generally Colorado River Conservation Dist. v. United States, 424 U.S. 800, 814-16 (1976).

> there are principles unrelated to
> considerations of proper constitutional
> adjudication and regard for federal-state
> relations which govern in situations
> involving the contemporaneous exercise of
> concurrent jurisdictions, either by federal
> courts or by state and federal courts. These
> principles rest on consideration of "[w]ise
> judicial administration, giving regard to
> conservation of judicial resources and
> comprehensive disposition of litigation."

Colorado River, 424 U.S. at 817, quoting Kerotest Mfg. Co. v.
C-O-Two Fire Equip. Co., 342 U.S. 180, 183 (1952). While
abstention even under the three traditional categories is the
exception, rather than the rule, Colorado River, 424 U.S. at 813
(Moses H. Cone, 406 U.S. at 14), Colorado River abstention is
even rarer, for two reasons. First, generally, the pendency of a
case in state court will not bar federal litigation of a case
concerning the same issues if the federal court has jurisdiction
over the case before it. Id. at 817. Second, the federal courts
have a "virtually unflagging obligation . . . to exercise the
jurisdiction given them." Id. at 817; see also Olde Discount
Corp. v. Tupman, 1 F.3d 202, 211 (3d Cir. 1993).

A.

In reviewing an abstention decision, "the underlying
legal questions are subject to plenary review, although the
decision to abstain is reviewed for abuse of discretion."
University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265,
269 (3d Cir. 1991); see also Moses H. Cone, 460 U.S. at 19;
General Glass Indus. Corp. v. Monsour Medical Found., 973 F.2d
197, 200 (3d Cir. 1992).

> In other words,
> The determination of whether this case falls
> in the area within which the district court
> may exercise discretion is . . . a matter of
> law, reviewable on a plenary basis.  Only if
> we determine that the case falls within this
> range will we apply an abuse of discretion
> standard in reviewing the district court's
> decision to abstain.

University of Maryland, 923 F.2d at 270.

B.

Cases that are not truly duplicative do not invite Colorado River deference.  University of Maryland, 923 F.2d at 276; Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37, 40-41 (3d Cir. 1980); see also LaDuke v. Burlington Northern R.R. Co., 879 F.2d 1556 (7th Cir. 1989).  Therefore, we initially inquire whether the Trent case and the Snead case are parallel.

Generally, cases are parallel so as to justify abstention under Colorado River when they involve the same parties and claims.  In LaDuke, a plaintiff sued his employer in state court and then filed an identical suit in federal court. The cases were "parallel" because they involved identical parties and claims.  La Duke, 879 F.2d at 1559.  Similarly, in Moses H. Cone and Colorado River, the state and federal cases involved the same claims and the same parties, although the defendants in the federal cases appeared as plaintiffs in the state cases.  Moses H. Cone, 460 U.S. at 7; Colorado River, 424 U.S. at 805-06. Thus, those cases, too, were parallel.

In contrast, when a federal court case involves claims that are distinct from those at issue in a state court case, the

cases are not parallel and do not justify Colorado River abstention.  In University of Maryland, for example, we reversed a district court's dismissal of a class action fraud case filed by policyholders of an insolvent insurance company against the insurance company's independent auditor.  The district court decided to abstain under Burford v. Sun Oil Co., 319 U.S. 315 (1943) (see note 5, supra), in favor of a state court case against the same auditor brought by the Pennsylvania insurance commissioner on behalf of the insurance company and its policyholders.  Although the district court had based its decision upon Burford, we reviewed its decision under both Burford and Colorado River.

We reversed the district court because the parties and claims in each of the two cases differed.  The insolvent insurance company was a party to the state court suit but not to the one brought in federal court.  The classes of policyholders involved in each case differed.  And the insurance commissioner's lawsuit alleged fewer legal bases for relief than did the federal court suit.  University of Maryland, 923 F.2d at 268–69.  Therefore, the policyholders' claims in the federal court case were "distinct" from those asserted in the commissioner's case; because of this "lack of identity of all issues," and because there was "no theoretical obstacle to both actions proceeding independently," we ruled that abstention under Colorado River would be improper.  Id. at 276.

Similarly, in Complaint of Bankers Trust, we admonished that "[i]t is important . . . that only truly duplicative

proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate." Complaint of Bankers Trust, 636 F.2d at 40. In that case, we reviewed a federal district court's decision to defer in favor of litigation pending in another federal district court. Because neither the parties to nor the relief requested in the two cases at issue were identical, and because the two cases employed substantially different "approaches" and might "achieve potentially different results," we reversed the district court's "docket-control dismissal" of one of the cases. Id. at 41.

In this case, the district court ruled that Trent and Snead were parallel because it found them to be "substantially identical." App. at 180. The two cases do in fact raise nearly identical allegations and issues, and the defendants in each are essentially identical.[6] Moreover, as the district court found, the plaintiffs in the two cases are effectively the same.[7] That

---

[6]. The Snead case in state court includes as defendants the two medical directors of CDC in addition to CDC itself. This does not trouble us, since abstention will in no way deny Trent an opportunity to have his claims litigated against the remaining defendant in this federal suit -- CDC. See supra n.1.

[7]. The court stated:

> The class previously certified by the state court includes all CDC patients who utilized the defective dialysis equipment at CDC and suffered injury as a result. Although the putative class defined by plaintiff Trent is somewhat more limited, he relies upon the same allegations of negligence.

App. at 180 (emphasis added).

<u>Snead</u> has been certified only as to duty and breach of that duty does not negate the fact that the determination of those issues in <u>Snead</u> will resolve them in <u>Trent</u>.  Trent's decision not to opt out of <u>Snead</u>[8] means that <u>Snead</u> will result in recovery for him if the class prevails on the class-wide issues and he is found to have suffered damages as a result of the defendants' actions.  In sum, <u>Trent</u> and <u>Snead</u> are parallel and thus present an appropriate setting for <u>Colorado River</u> abstention.

C.

Given that this case is one in which <u>Colorado River</u> abstention may be appropriate, we now must determine whether the decision to abstain constituted an abuse of the district court's discretion.  We conclude that it did not.

---

In fact, the class in <u>Snead</u> had not yet been certified at the time the district court decided to abstain.  App. at 177.  Subsequent events have nonetheless proven the district court judge to have been prescient, for, as previously noted, the judge handling <u>Snead</u> has, during the pendency of this appeal, certified a class consisting of "all persons who received bicarbonate dialysate treatments at CDC's Lansdowne facility between January 1, 1990 and February 7, 1992, the spouses of all such patients and the administrators and the executors of the estates of such persons and/or their spouses."  Attachment to Letter from P. Quinn to P. Lester (Deputy Clerk, Third Circuit) of June 30, 1994 (state court order in <u>Snead</u> granting class certification).  Clearly, <u>Trent</u> would be a member of that class.

[8]. Trent states that he intends to move for permission to opt out of the <u>Snead</u> class after receiving our decision in this appeal.  At oral argument, he expressed an intention to pursue his case on an individual basis instead of as a class action.  We cannot assume that his belated motion to opt out of the <u>Snead</u> class will be granted, however, so we must consider him to be a member of the <u>Snead</u> class as we decide this appeal.

The factors which govern a district court's exercise of discretion in deciding whether to abstain under Colorado River are:

(1)   Which court first assumed jurisdiction over property involved, if any;

(2)   Whether the federal forum is inconvenient;

(3)   The desirability of avoiding piecemeal litigation;

(4)   The order in which the respective courts obtained jurisdiction;

(5)   Whether federal or state law applies; and

(6)   Whether the state court proceeding would adequately protect the federal plaintiff's rights.

See generally Moses H. Cone, 460 U.S. at 15-16, 19-26; see also Colorado River, 424 U.S. at 818-19 ("No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. . . . Only the clearest of justifications will warrant dismissal.").

Many factors weigh in favor of abstention in this case. The principal reasons to abstain, once abstention has been found to be possible, are to avoid piecemeal litigation and to adjudicate state-law issues in state court. Cf. DeCisneros v. Younger, 871 F.2d 305, 309 (2d Cir. 1989). Here, state rather than federal law is at issue, and piecemeal litigation might

result if the district court presided over <u>Trent</u> while <u>Snead</u> was progressing through the state court system.  Moreover, the class certified in <u>Snead</u> is broader than that asserted in <u>Trent</u>.  <u>Snead</u> thus will resolve more individuals' claims than <u>Trent</u> would; it makes more sense to resolve common issues in a setting which will dispose of the most claims.  Finally, <u>Snead</u> was filed before <u>Trent</u> and, more importantly under <u>Moses H. Cone</u>, it appears as if Snead has invested more time into substantive work and discovery in his case.  <u>See</u> App. at 32.

In sum, because the parties agree that there is no <u>res</u> over which any court has exercised jurisdiction, only one factor truly weighs in favor of the district court exercising federal jurisdiction.  That is simply that the federal forum is not inconvenient.  This alone, even given the obligation federal courts have to exercise their jurisdiction, cannot justify a decision to exercise jurisdiction when the countervailing factors weigh so heavily in favor of abstention.  Accordingly, we will affirm.

IV.

Trent and CDC also argue that the district court erred in granting Snead's motion to intervene because Snead had not complied with the requirements of Rule 24(c) of the Federal Rules of Civil Procedure in filing it.[9] We need not reach the merits of this argument on appeal because orders granting intervention are not final for purposes of appeal. In re Continental Airlines, Inc., 932 F.2d 282, 286 (3d Cir. 1991); Matter of Marin Motor Oil, Inc., 689 F.2d 445, 447 (3d Cir. 1982); Equal Employment Opportunity Commission v. American Tel. & Tel. Co., 506 F.2d 735, 742 (3d Cir. 1974). Trent's and CDC's arguments must await the conclusion of this case before they may be considered.

V.

In conclusion, we will affirm the district court's decision to abstain from proceeding further with Trent until the parties inform it either that Snead has reached some conclusion but issues remain for disposition in Trent or that it is appropriate to proceed in Trent despite the continuing pendency of Snead.

---

[9]. Rule 24(c) requires that a person seeking to intervene in a lawsuit serve upon the parties to the lawsuit a motion to intervene which sets forth the grounds for intervention and is accompanied "by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).