

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-30-1997

# Ryan v. Johnson

Precedential or Non-Precedential:

Docket 96-5419

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Ryan v. Johnson" (1997). *1997 Decisions.* Paper 117.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/117

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 30, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5419

TARA RYAN

Appellant

v.

CHARLES V. JOHNSON; LOUANN JOHNSON, h/w; TED
CAM, JR.; MELANIE WEISS; GREGORY KIESER; SAMUEL
D. HEWINS; MARIAN PAUZA; LAURA ELIZABETH PRENG;
OMER C. MARION; KRISTIN PAULICK; JENNIFER RADAR;
MATTHEW MCCABE; MICHAEL J. LANG

CHARLES V. JOHNSON; LOUANN JOHNSON

Third-Party Plaintiffs

v.

THEODORE CAM, JR.; GREGORY KIESER; SAMUEL D.
HEWINS; MARIAN PAUZA; LAURA E. PRENG; MICHAEL J.
LANG; OMER C. MARION; KRISTIN PAULICK; JENNIFER
RADAR; MATTHEW MCCABE; MELANIE WEISS

Third-Party Defendants

(D.C. No. 95-cv-05789)

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Argued April 15, 1997

Before: SCIRICA, COWEN and NYGAARD, Circuit Judges.

(Opinion filed May 30, 1997)

MICHAEL D. SHAFFER, ESQUIRE
 (Argued)
Suite 300
330 Market Street
Philadelphia, PA 19106

Attorney for Appellant

LEWIS B. APRIL, ESQUIRE
Cooper, Perskie, April,
Niedelman, Wagenheim & Levenson
1125 Atlantic Avenue, Suite 320
Atlantic City, NJ 08401

THOMAS F. BRADLEY, ESQUIRE
 (Argued)
Hankin, Sandson & Sandman
30 South New York Avenue
Atlantic City, NJ 08401

Attorneys for Appellees
Charles V. Johnson and LouAnn
Johnson

JOHN R. MOELLER, JR., ESQUIRE
Law Offices of Stephen E. Gertler
1350 Campus Parkway
P.O. Box 1447
Wall Township, NJ 07719

Attorney for Appellee
Ted Cam, Jr.

MICHAEL B. OROPOLLO, ESQUIRE
Harwood Lloyd
Two Tower Center
East Brunswick, NJ 08816

Attorney for Appellee
Kristin Paulick

**OPINION OF THE COURT**

NYGAARD, <u>Circuit Judge</u>.

Tara Ryan appeals from the district court's decision to dismiss her diversity action under the doctrine set forth in <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800, 96 S. Ct. 1236 (1976), and subsequent cases. Because the district court applied <u>Colorado River</u> abstention incorrectly, we will reverse.

I.

In 1995, Ryan attended a party at a beach house owned by Charles and LouAnn Johnson and rented for the summer to the remaining defendants. The exterior, second-floor deck of the house suddenly collapsed, injuring at least thirty-three persons, including Ryan, who suffered a serious spinal injury. To date, seventeen of these persons have filed suit.

Ryan filed this diversity action in federal district court, alleging that the defendants negligently caused her injuries. The remaining sixteen plaintiffs, however, were nondiverse from the defendants and filed their suits in the New Jersey Superior Court. In that state court action, twenty-two other parties have been joined as third-party defendants, including contractors, realtors and predecessors in title.

Defendants in the federal action moved the district court to abstain from exercising its jurisdiction under <u>Colorado River</u>, arguing that the presence of parallel state and federal proceedings involving the same issues counseled in favor of abstention. The district court, in an unreported opinion, agreed and granted the motion, primarily to avoid "piecemeal litigation" and because the case was likely to involve complex state law issues. This appeal followed.

II.

It is axiomatic that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given

3

them" by Congress. Colorado River, 424 U.S. at 817, 96 S. Ct. at 1246. This precept can be traced at least as far back as Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821), where the Supreme Court, speaking through Chief Justice Marshall, stated:

It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. . . . We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

This principle is no less true in cases where, as here, there is a parallel litigation in a state court. "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." Colorado River, 424 U.S. at 817, 96 S. Ct. at 1246 (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S. Ct. 501, 505 (1910)); accord Chicot County v. Sherwood, 148 U.S. 529, 534, 13 S. Ct. 695, 697-98 (1893); University of Maryland v. Peat Marwick Main & Co., 923 F.2d 265, 275-76 (3d Cir. 1991) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action.") (citing McClellan).

Nevertheless, in Colorado River, the Supreme Court recognized that there are certain extremely limited circumstances in which a federal court may defer to pending state court proceedings based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817, 96 S. Ct. at 1246. It emphasized that "[a]bdication of the obligation to decide cases can be justified . . . only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." Id. at 813, 96 S. Ct. at 1244.

The Court then set forth several factors which can support this type of abstention, after cautioning that no one

4

factor is determinative and "[o]nly the clearest of justifications will warrant dismissal." Id. at 818-19, 96 S. Ct. at 1247. Those factors included: (1) whether the state court assumed in rem jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forums. Id. at 818, 96 S. Ct. at 1246-47. The issue before us is whether the district court properly applied this narrow exception to jurisdiction on the facts of the present case.

A.

A threshold issue that must be decided in any Colorado River abstention case is whether the two actions are "parallel." If they are not, then the district court lacks the power to abstain. This is a legal issue over which we exercise plenary review. See Trent v. Dial Medical, Inc., 33 F.3d 217, 223 (3d Cir. 1994). Generally, cases are parallel when they involve the same parties and claims. Id. at 224.

Appellant argues that the state and federal actions are not sufficiently parallel to justify Colorado River abstention. She avers that the state court defendants have joined the architects and builders of the beach house as third-party defendants, and that such joinder might not be possible in the federal litigation because one of those parties might successfully avoid service of process. She also asserts that "John Doe" defendants have been joined in state court, tolling the statute of limitations, but that this joinder is likely to be impossible in federal court because the statute of limitations will have run by the time these defendants' true identities are discovered. This is far too speculative a basis on which to conclude that the two actions are not parallel.1 We reject appellant's argument.

_____

1. We note, however, that the state and federal cases, while otherwise involving the same facts and issues, have different plaintiffs and the federal plaintiff is not joined in the state litigation. There is some question whether, in the absence of identical plaintiffs, two cases can be deemed parallel for Colorado River purposes. See Alliance of American Insurers v. Cuomo, 854 F.2d 591, 603 (2d Cir. 1988). Nevertheless, appellant does not argue that abstention was improper on this basis; thus, the issue is not before us and we express no opinion on it.

5

B.

1.

Once the state and federal cases are found to be parallel, the next inquiry is whether the district court abused its discretion when it decided to abstain, an inquiry which is conducted under the factors set forth in Colorado River and its progeny. See Trent, 33 F.3d at 225. Of course, to the extent the district court evaluated a factor based on an erroneous view of the law, it necessarily abused its discretion and our review becomes plenary. See, e.g., United States v. Romualdi, 101 F.3d 971, 973 (3d Cir. 1996); Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993).

In Colorado River, the United States filed suit in federal district court against a large group of water users in Water Division 7. The government sought a declaratory judgment of its water rights in that region. Shortly thereafter, one of the federal defendants filed an action in state court, seeking to join the United States as a party under the McCarran Amendment, 43 U.S.C. § 666, which allows such joinder in water rights cases, and asked the federal court to abstain. The district court granted the motions.

In upholding the district court's decision to dismiss the federal action, the Supreme Court focused its attention on what it considered the most important factor on the record before it: avoiding piecemeal litigation. The extraordinary nature of the McCarran Amendment, which allows the United States to be deprived of its right to adjudication in a federal forum, see 28 U.S.C. § 1346, was evidence of a clear federal policy that the state court systems were the preferred means for avoiding the piecemeal adjudication of water disputes. Colorado River, 424 U.S. at 819, 96 S. Ct. at 1247.2

_____

2. Regarding the other factors, the Court stated that the fact that no proceedings of substance had occurred in the district court counseled in favor of abstention, as did the fact that the suit turned on state law water rights, and the 300 mile distance between the local and federal courts. Id at 821, 96 S. Ct. at 1248.

6

Several years later, the Supreme Court further refined the Colorado River doctrine in Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S. Ct. 927 (1983), a case involving concurrent state and federal proceedings arising out of a building construction dispute in which a hospital sued a contractor in state court and the contractor sought enforcement of a contractual arbitration clause against the hospital in federal district court. There, the Court reiterated the narrowness of the Colorado River exception and held that abstention was improper on the facts before it.

The Cone Court emphasized that the most important-- indeed "paramount"--factor justifying abstention in Colorado River was the McCarran Amendment and its policy against piecemeal litigation. 460 U.S. at 20, 103 S. Ct. at 939. In contrast, the Cone case involved the Federal Arbitration Act, which the Court noted expressly requires piecemeal adjudication of certain disputes when necessary to enforce an agreement to arbitrate. Id.

The Court then set forth another factor relevant to the abstention calculus under Colorado River: whether state or federal law provided the rule of decision. With respect to that issue, the court noted that the Arbitration Act, unlike the McCarran Amendment, did not express any strong preference for state proceedings that militated in favor of abstention. It then stated emphatically that

our task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under Colorado River to justify the surrender of that jurisdiction. Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender, the presence of federal law issues must always be a major consideration weighing against surrender.

Id. at 25-26, 103 S. Ct. at 942.3

_____

3. Finally, the Cone Court set forth afinal consideration: whether the state court would adequately protect the rights at issue. Because it was questionable whether the Arbitration Act could require a state court to issue an order compelling arbitration, the Court found that this factor weighed against abstention. Id. at 26-27, 103 S. Ct. at 942-43.

7

We too have had occasion to apply and refine the contours of Colorado River abstention. In Western Auto Supply Co. v. Anderson, 610 F.2d 1126 (3d Cir. 1979), two businesses filed suit against each other in state court. One of the companies then filed a federal diversity action against an individual defendant as guarantor of the other business' debt. The district court dismissed the federal suit, but we reversed, holding that none of the factors that justified abstention in Colorado River was present. Id. at 1127.

On the other hand, we upheld the use of Colorado River abstention in Ingersoll-Rand Fin. Corp. v. Callison, 844 F.2d 133 (3d Cir. 1988). There, the holder of a notefiled a diversity suit against its maker. Already pending in Texas state court was a securities fraud action by the federal defendant against the federal plaintiff. Under 15 U.S.C. § 77v, the securities case was nonremovable even though it arose under federal law. We held that that statute was evidence of a strong federal policy against piecemeal litigation:

The mandate of § 77v cannot be effectuated if the plaintiff in a securities case brought in state court may be thwarted in his choice of forum by being forced to litigate simultaneously his claims as defenses in federal court.

Id. at 137. Thus, it is evident that the "avoidance of piecemeal litigation" factor is met, as it was in Callison and Colorado River itself, only when there is evidence of a strong federal policy that all claims should be tried in the state courts. See Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Comm'n, 791 F.2d 1111, 1118 (3d Cir. 1986) (denying abstention, inter alia, because "the PUC has not pointed to any Congressional legislation like the McCarran Amendment in Colorado River that evinces `a tempering of the policy of enforcing the plaintiff 's choice of a federal forum in favor of a policy of avoiding duplicative or inconvenient litigation.' " (quoting Harris v. Pernsley, 755 F.2d 338, 345 (3d Cir. 1985) (similar)).

A recent decision of this court, however, has recently applied a broader standard to the "avoidance of piecemeal

8

litigation" factor. In <u>Trent</u>, a dialysis patient filed a federal class action sounding in negligence against his dialysis center and several of its suppliers, which he alleged injured him and the other members of the class. Another party had already filed a similar action in state court. This person successfully intervened in the federal action, after which the district court <u>sua sponte</u> abstained under <u>Colorado River</u>. We affirmed, focusing on the piecemeal litigation factor and the presence of state law issues:

> The principal reasons to abstain . . . are to avoid piecemeal litigation and to adjudicate state-law issues in state court. Here, state rather than federal law is at issue, and piecemeal litigation might result if the district court presided over <u>Trent</u> while <u>Snead</u> was progressing through the state court system.

<u>Id.</u> at 225.

We cannot reconcile <u>Trent</u> with either the caselaw of this circuit, or <u>Colorado River</u> and <u>Cone</u>. As we have discussed <u>supra</u>, neither we nor the Supreme Court had ever held, until our decision in <u>Trent</u>, that the mere possibility of piecemeal litigation justifies <u>Colorado River</u> abstention; rather, there must be a strongly articulated <u>congressional policy</u> against piecemeal litigation in the specific context of the case under review. <u>See, e.g.</u>, <u>Colorado River</u>, 424 U.S. at 819, 96 S. Ct. at 1247 ("The clear federal policy evinced by [the McCarran Amendment] is the avoidance of piecemeal adjudication of water rights in a river system."); <u>Cone</u>, 460 U.S. at 16, 103 S. Ct. at 937 ("[T]he [McCarran] Amendment represents Congress' judgment that the field of water rights is one <u>peculiarly appropriate</u> for comprehensive treatment in the forums having the greatest expertise and experience." (Emphasis added.)) The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts. <u>See Kentucky West Virginia Gas Co.</u>, 791 F.2d at 1118 (requiring congressional legislation); <u>Harris</u>, 775 F.2d 338 at 345 (same); <u>Western Auto Supply</u>, 610 F.2d at 1127 (finding none of the <u>Colorado River</u> factors satisfied in state law action on debt); <u>see also Burns v. Walter</u>, 931 F.2d 140, 146 (1st Cir. 1991) (declaring that concern for

9

avoiding piecemeal adjudication is met only where it "gives rise to special complications[,]" not in straightforward state law negligence case).

Indeed, if the mere possibility of concurrent state-federal litigation satisfies Colorado River's "piecemeal adjudication" test, the test becomes so broad that it swallows-up the century-old principle expressed in University of Maryland, Colorado River, McClellan and Sherwood that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." Colorado River, 424 U.S. at 817, 96 S. Ct. at 1246. If this were the law, it is difficult to conceive of any parallel state litigation that would not satisfy the "piecemeal adjudication" factor and militate in favor of Colorado River abstention. If that is true, then the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them[ ]" recognized in Colorado River, 424 U.S. at 817, 96 S. Ct. at 1246, and reiterated in Cone would effectively be eviscerated, a result we cannot presume either the Supreme Court or this court to have intended.

Under Third Circuit Internal Operating Procedure 9.1, when two decisions of this court conflict, we are bound by the earlier decision. United States v. Monaco, 23 F.3d 793, 803 (3d Cir. 1994); O. Hommel Co. v. Ferro Corp., 659 F.2d 340, 354 (3d Cir. 1981). It is clear that, under our prior caselaw, specifically University of Maryland, Kentucky West Virginia Gas Co., Harris and Western Auto Supply, the "piecemeal adjudication" factor would not have been satisfied by the presence of a state law negligence action. Thus, we will not apply Trent's pronouncement on this point to decide the issue before us.

Appellees nevertheless argue that this case presents special considerations justifying finding the "piecemeal adjudication" factor satisfied. Relying on the reasoning of the district court, they invite us to hold that the presence of a limited fund may constitute a special circumstance beyond the mere presence of parallel state-federal litigation. Specifically, they point to the limited fund of insurance available to satisfy the claims of the dozens of people who were injured in the deck collapse. Were both the state and federal actions to proceed, appellees argue, the federal

10

plaintiff might obtain a judgment first and collect a disproportionate sum, leaving a greatly depleted "pot" for the other claimants. Although we are not unmindful of that concern, we nevertheless hold that it does not support Colorado River abstention.

First of all, limited fund problems are, unfortunately, not uncommon in tort litigation. That fact itself makes such cases unlikely candidates for abstention under Colorado River, given the Supreme Court's admonition that "only exceptional circumstances, the clearest of justifications, . . . can suffice . . . to justify the surrender of . . . jurisdiction." Cone, 460 U.S. at 25-26, 103 S. Ct. at 942 (internal quotation marks and emphasis deleted). More importantly, it is Congress that granted plaintiffs like Ryan diversity jurisdiction under 28 U.S.C. § 1332, and it is evident from the cases reviewed supra that only a congressional intent to require state-court adjudication, such as the McCarran Amendment or 15 U.S.C. § 77v, will be sufficient to divest it. Cf. MCI Telecommunications Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1109 (3d Cir. 1995) (Nygaard, J., concurring) (noting that state law cannot divest a federal court of the jurisdiction conferred on it by Congress), cert. denied, 117 S. Ct. 64 (1996). When Congress enacts a statute that allows the United States to be joined as a defendant in state court or that forbids the removal of certain kinds of securities cases, it is making a strong statement that these cases either belong in state court or that the plaintiff's choice of a state forum is a paramount interest. There is simply no such evidence of congressional policy here.

Accordingly, we hold that the district court erred when it found that the "avoidance of piecemeal litigation" factor supported abstention. We turn next to the other principal factor on which the court justified its abstention decision: the presence of state law issues.

2.

The district court concluded that the presence of state law issues, including the construction of state and local building codes, counseled in favor of abstention. We disagree. As Cone made clear, while the presence of federal

11

issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law. 460 U.S. at 26, 103 S. Ct. at 942. On the other hand, the Cone Court did hint that, "in some rare circumstances[,]" state law issues could weigh in favor of the federal court's surrender of jurisdiction, id., and the Second Circuit has found such circumstances sufficient in a mass tort case. In Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205 (2d Cir. 1985), a blackout forced the closing of many businesses in Manhattan for several days. Some of those businesses recovered under their business interruption policies, and the insurers filed subrogation actions in federal court against the allegedly negligent city and public utility companies. Meanwhile, Gimbel's Department Store and several hundred other plaintiffs commenced a state court action against the same defendants, seeking to recover those sums not covered by insurance. The court held that, because the case raised novel issues of state tort and construction law, the scales were tipped in favor of abstention. Id. at 211.4

Whatever its inherent persuasiveness, Arkwright-Boston is distinguishable from this case. Although a few dozen people were injured by the deck collapse, this is hardly a mass tort situation with hundreds of claims and parties. It thus presents a far less compelling argument for abstention than was present in Arkwright-Boston.

We are also skeptical of Arkwright-Boston's rationale, at least as applied to the straightforward state negligence law issues involved here. Although it is possible that some case could involve a skein of state law so intricate and unsettled that resolution in the state courts might be more appropriate, traditional negligence law does notfit that description. It is an area, rather, in which federal courts are called upon routinely to predict state law. Were we to consider the "state law issue" factor to be met in this case, it would be applicable in many more instances than the

_____

4. The court also found the "piecemeal litigation" prong satisfied, on a rationale similar to Trent. As we have discussed supra, we cannot follow that holding.

12

"rare circumstances" required by the Supreme Court in Cone. Instead, it would be met in nearly every diversity case in which the law was not entirely settled. Nor do we see any principled difference between the interpretation of state law generally and the construction of building codes. Those laws and regulations are no more inherently complex or unsettled than any other state statute or regulation. We therefore conclude that the district court erred when it concluded that this factor supported abstention.

3.

We think the district court also was incorrect when it found that the ability of the state court to protect Ryan's rights militated in favor of surrendering jurisdiction. It opined:

While plaintiff argues that "there are inherent dangers in forcing a non-resident plaintiff from Massachusetts to proceed at the local state level," this Court does not find such arguments persuasive at this point in history. Beyond this general concern that a foreign litigant would be disfavored, plaintiff has identified no reasons to believe that the state court would be inadequate to protect her rights. We therefore conclude that this factor supports a stay or dismissal.

Ryan v. Johnson, No. 95-5789 (AET), typescript at 7 (D.N.J. June 13, 1996). This reasoning is problematic for two reasons.

First, regardless of a district court's personal views on the subject, it is the singular role of Congress to amend or repeal the diversity statute, 28 U.S.C. § 1332. While this issue has generated much controversy and a number of legislative proposals to do just that, none has yet been enacted. Until such time as that may happen, the federal courts have no choice but to apply the statute faithfully and in accordance with well-settled law.

Second, the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction. Instead, this factor is

13

normally relevant only when the state forum is <u>in</u>adequate. For example, in <u>Cone</u>, the federal plaintiff sought an order compelling arbitration. It was questionable whether the state court had the power to grant such an order, and the Supreme Court weighed this factor against abstention. 460 U.S. at 26-27, 103 S. Ct. at 942-43. When the state court is adequate, however, the factor carries little weight. <u>See</u> <u>Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.</u> , 800 F.2d 325, 328 (2d Cir. 1986).

III.

In conclusion, none of the <u>Colorado River</u>/ <u>Cone</u> factors weighs in favor of abstention. Thus, the strong presumption in favor of exercising jurisdiction over this case has not been overcome.5 We will reverse and remand the cause for further proceedings on the merits.

A True Copy:
Teste:

<u>Clerk of the United States Court of Appeals</u>
<u>for the Third Circuit</u>

_____

5. The district court's evaluation of the remaining factors, which did not weigh in favor of abstention in any event, is not the subject of serious dispute, hence we need not address those factors here.

14