**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY**

v.

**BOARD OF REVISION OF TAXES OF THE CITY OF PHILADELPHIA, et al.**

No. CIV. A. 99–325.

United States District Court,
E.D. Pennsylvania.

April 8, 1999.

 

Carrie E. Watt, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Southeastern Pennsylvania Transportation Authority Plaintiff.

Margarete E. Pawlowski, James J. Zwolak, James J. Zwolak, Margarete E. Pawlowski, Frank A. Mayer, City of Philadelphia Law Dept., for Board of Revision of Taxes of The City of Philadelphia, The City of Philadelphia, The School District of Philadelphia, Defendants.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff Southeastern Pennsylvania Transportation Authority ("SEPTA") seeks a declaration that its headquarters and all other property it owns is exempt from local real estate taxes. It also requests an injunction to prohibit the assessment and levying of such taxes. Before the court is the motion of the defendants to dismiss for lack of subject matter jurisdiction because of the Tax Injunction Act, 28 U.S.C. § 1341, and for lack of ripeness.

According to the complaint, SEPTA is a metropolitan transportation authority, a body corporate and politic, created under the laws of the Commonwealth of Pennsylvania to provide commuter rail service to the City of Philadelphia ("City") and neighboring suburban counties. *See* 74 Pa. Cons.Stat. Ann. §§ 1711 *et seq.* Its headquarters, which is a subject of the present dispute, is located at 1234 Market Street in Philadelphia. Since SEPTA does not presently require the use of the entire building, it leases a portion to the City and other tenants. In May, 1994, SEPTA filed an application for a real estate tax exemption with the Philadelphia Board of Revision of Taxes, which granted SEPTA an exemption for 85% of the value of the premises. Dissatisfied with this result, SEPTA has appealed to the Court of Common Pleas of Philadelphia County.

In the present action, SEPTA contends that it is entitled to be free of local real estate taxes not only pursuant to state law but pursuant to federal law as well. SEPTA relies on 49 U.S.C. § 24301(f) which provides:

**Tax exemption for certain commuter authorities.**—A commuter authority that was eligible to make a contract with Amtrak Commuter to provide commuter rail passenger transportation but which decided to provide its own rail passenger transportation beginning January 1, 1983, is exempt, effective October 1,

1981, from paying a tax or fee to the same extent Amtrak is exempt.

Defendants do no challenge that SEPTA is a commuter authority described under § 24301(f).[1] Thus, for local tax purposes, § 24301(f) treats SEPTA in the same way as it treats Amtrak. Under 49 U.S.C. § 24301(l )(1), Amtrak is exempt from local real estate taxes:

> Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, ... after September 30, 1981. In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.

Congress enacted this tax exemption as part of comprehensive legislation to save the nation's dying rail passenger system. *See Nat'l R.R. Passenger Corp. v. Commw. of Pa. Pub. Util. Comm'n,* 848 F.2d 436, 438 (3d Cir.1988). Through tax relief, it has sought to help financially strapped rail passenger commuter authorities and to place part of the burden on the communities benefiting from their presence. *See Southeastern Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n,* 802 F.Supp. 1273, 1278–79 (E.D.Pa.1992).

Defendants argue, however, that even if SEPTA is exempt from local taxes, the Tax Injunction Act bars a federal court from hearing this action. The Act reads:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. Defendants contend that it would violate the Act for this court to interfere with the City of Philadelphia's collection of local real estate taxes when, it is undisputed, SEPTA has a "plain, speedy and efficient remedy" to challenge the tax in the courts of Pennsylvania.

■ In support of its position, defendants cite the Supreme Court's decision in *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976), and its progeny, that the Tax Injunction Act is to be interpreted broadly. It "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations." *Tully,* 429 U.S. at 73, 97 S.Ct. 219. In keeping with the Act's purpose, it has been read not only to prohibit injunctions but declaratory judgments as well. *See Behe v. Chester County Bd. of Assessment Appeals,* 952 F.2d 66, 68 (3d Cir.1991). The Tax Injunction Act, when applicable, is a jurisdictional bar to an action in the federal courts. *See id.*

■ Despite the Tax Injunction Act, 49 U.S.C. § 24301(l )(2) provides that "[t]he district courts of the United States have original jurisdiction over a civil action Amtrak brings to enforce this subsection [prohibiting local taxes] and may grant equitable or declaratory relief requested by Amtrak." In its previous enactment as 45 U.S.C. § 546(b), the section contained the additional language that the federal courts had authority to enforce this tax exemption provision "[n]otwithstanding the provision of section 1341 of Title 28 [the Tax Injunction Act]." The present version omits the reference to the Tax Injunction Act. Nonetheless, the congressional report accompanying the amendments explained that the specific reference to the Act was simply omitted as surplusage. *See* H.R.Rep. No. 103–180, at 123 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4, 940. Thus, it is clear that the Tax Injunction

---

**1.** Title 49 U.S.C. § 24102(3) defines a commuter authority as a "State, local, or regional entity established to provide, or make a contract providing for, commuter rail passenger transportation."

Act does not prevent a federal action by Amtrak to enjoin states and their political subdivisions from taxing it.

■ The question remains whether the access to the federal courts afforded Amtrak also applies to commuter authorities such as SEPTA. While § 24301(*l*)(2) does not specifically refer to suits by such entities, we do not view this deficiency, as controlling. For purposes of local taxation, § 24501(g) treats SEPTA like Amtrak: a commuter authority "is exempt . . . from paying a tax or fee to the same extent Amtrak is exempt." Under the legislative scheme designed to save financially threatened commuter authorities, it would be anomalous for Congress to have required local tax exemptions and then to have withheld from the authorities the right to enforce those exemptions in the federal courts. In *Southeastern Pa. Transp. Auth.*, 802 F.Supp. at 1278–79, Judge Louis Pollak of this court faced the same issue as we confront here. He held, correctly in our view, that subject matter jurisdiction existed to enjoin the Pennsylvania Public Utility Commission ("PUC") from making certain assessments against SEPTA. The Court of Appeals ultimately affirmed the District Court's injunction against the PUC. *Southeastern Pa. Transp. Auth. v. Pa. Pub. Util. Comm'n*, 826 F.Supp. 1506 (E.D.Pa.1993), *aff'd*, 27 F.3d 558 (3d Cir.1994). Although the Court of Appeals did so with an unpublished opinion, the very act of affirmance necessarily signified that subject matter jurisdiction existed notwithstanding the Tax Injunction Act. Had there not been jurisdiction, the Court of Appeals would have dismissed the lawsuit, not affirmed the District Court's decision. The affirmance itself, without regard to the accompanying opinion, is persuasive, even if not controlling. Since subject matter jurisdiction existed there, we believe it exists here.

The result is not surprising. As Judge Pollak noted, there are other precedents where parties were permitted to challenge local taxes in federal court where the statutes in issue never specifically abrogated the Tax Injunction Act. *See Southeastern Pa. Transp. Auth.*, 802 F.Supp. at 1282–83. In each instance, the court concluded that Congress had implicitly authorized the federal court to adjudicate the matter due to the nature of the federal interest. The same is true in this case. Congress had endeavored to resuscitate rail passenger service throughout the country. One element of this effort was to exempt the commuter rail authorities from the onus of local taxation. We do not believe that the Tax Injunction Act, as broadly as it is to be interpreted, blocks the federal courts from enforcing this strong and clear congressional mandate. *See id.* at 1284–85. Otherwise, SEPTA's exemption from local taxation, granted by federal law, would be subject, as a practical matter, to the sufferance of local officials with review by the state courts only. We do not think this was what Congress intended.

■ Defendants next argue that the Tax Injunction Act bars this court from deciding whether state law allows the taxation of SEPTA. If this case involved only the question of whether the tax is lawful under Pennsylvania law, we agree that we would not have jurisdiction. *See, e.g., Behe*, 952 F.2d at 67–71. However, we may have supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Assuming we could exercise supplemental jurisdiction over the state law claims despite the Tax Injunction Act, we elect not to do so. Section 1367(c)(4) gives the court discretion to decline to exercise jurisdiction "in exceptional circumstances" when "there are other compelling reasons for declining jurisdiction." We believe it would be contrary to the principles of federalism embodied in the Tax Injunction Act if we were to become involved in deciding whether a local tax is lawful under state law. Considering the "expansive reading" the Supreme Court has given the Act and the purpose of Congress to limit federal court interference with state tax

collection, *id.* at 68, we conclude there are "compelling reasons for declining jurisdiction" over the state statutory and constitutional claims, 28 U.S.C. § 1367(c)(4).

■■■ The defendants request that we abstain, in accordance with *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), because of SEPTA's lawsuit pending against them in the Court of Common Pleas of Philadelphia County. In order for a federal court to exercise its discretion to dismiss or stay an action under *Colorado River,* there must first be a pending state court proceeding involving the same claims and parties or at least "nearly identical allegations" and parties who are "essentially identical." *Trent v. Dial Medical of Florida, Inc.,* 33 F.3d 217, 224 (3d Cir. 1994). The two actions must be "parallel." *Ryan v. Johnson,* 115 F.3d 193, 196 (3d Cir.1997). SEPTA does not contest the fact that these threshold requirements have been met. Therefore, in determining whether we should exercise our discretion to abstain, we must consider the following factors:

(1) Which court first assumed jurisdiction over property involved, if any;

(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

(6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.

*See Trent,* 33 F.3d at 225.

■■■ The Supreme Court has stated that "[o]nly the clearest of justifications will warrant dismissal" under this abstention doctrine. *Colorado River,* 424 U.S. at 819, 96 S.Ct. 1236. In making our determination, we do not go through a "mechanical checklist." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103

S.Ct. 927, 74 L.Ed.2d 765 (1983). We carefully balance the above factors, and we must remember that "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.*

The first of the enumerated factors is not pertinent in this action. However, the fourth consideration, closely related to the first, is relevant. The parties agree in their briefs that the federal action and the appeal of the Board of Revision of Taxes decision to the Court of Common Pleas were filed "concurrently." The parties represent to us that the state court action is still in its very early stages. These circumstances do not weigh in favor of abstention.

The federal forum is not significantly less convenient to the parties than the state forum. Both courts are located within a few blocks of each other in Philadelphia.

We turn next to the desirability of avoiding piecemeal litigation. This factor is met "only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan,* 115 F.3d at 198. There must be "a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Id.* We do not perceive such a policy with respect to the federal law at issue in this action. Although federal courts were not given exclusive jurisdiction over the federal claim at issue here, § 24301(f), read together with § 24301(*l*)(1) and (2), signifies a strong congressional policy that the federal courts should determine SEPTA's federal claim.

The fifth consideration weighs heavily against our abstention. This case involves an important question of federal law: whether §§ 24301(f), (*l*)(1), and (*l*)(2) exempt SEPTA's headquarters from local real estate taxes imposed by the City of Philadelphia and the School District of Philadelphia. "[T]he presence of federal-law issues must always be a major consid-

eration weighing against surrender" of jurisdiction. *Moses Cone*, 460 U.S. at 26, 103 S.Ct. 927. The Board of Revision of Taxes has already denied SEPTA's request for a 100% exemption. Given this history, and because this case involves an important question of federal law, we believe the federal court is the appropriate place to adjudicate this question.

The Supreme Court has cautioned that we should use our power to abstain sparingly since federal courts have "a virtually unflagging obligation ... to exercise jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *see also Ryan*, 115 F.3d at 198. For all of the above reasons, we will not abstain from exercising jurisdiction over SEPTA's federal law claim.

■ Finally, defendants ask that we dismiss this action as unripe insofar as it relates to all of SEPTA's property other than its headquarters at 1234 Market Street. According to the Supreme Court, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). SEPTA's complaint simply alleges facts regarding its headquarters. Plaintiff's application to the Board of Revision of Taxes for exemption from taxes, attached to the complaint, was also limited to its headquarters. There are no allegations before us that defendants have attempted or threatened to tax any other SEPTA property. As to any of SEPTA's property other than its headquarters, then, there are no facts alleged which show the existence of a "substantial controversy ... of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Therefore, we will dismiss the action as it relates to property other than plaintiff's headquarters.

Accordingly, we will deny the defendants' motion to dismiss the complaint or alternatively to abstain as to plaintiff's federal claim. We will dismiss plaintiff's claims under state law pursuant to 28 U.S.C. § 1367(c). We will also dismiss the complaint without prejudice insofar as it seeks relief as to any of SEPTA's property other than its headquarters at 1234 Market Street, Philadelphia.

## *ORDER*

AND NOW, this 8th day of April, 1999, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendants to dismiss for lack of subject matter jurisdiction or alternatively to abstain is DENIED as to plaintiff's federal claim;

(2) the motion of defendants to dismiss is GRANTED as to plaintiff's claims under state law; and

(3) the motion of defendants to dismiss for lack of ripeness is GRANTED without prejudice as to any property belonging to plaintiff other than 1234 Market Street, Philadelphia, Pennsylvania.