636 F.2d 37
 In the Matter of The COMPLAINT OF BANKERS TRUST COMPANY as
Owner-Trustee and Monsanto Company as Chartered Owner, and
Keystone Shipping Co. as Chartered Owner and Operator of the
S.S. EDGAR M. QUEENY, for Exoneration from and Limitation of Liability
and
Villaneuva Compania Naviera, S. A., Amoco Overseas Oil
Company and Amoco Transport Company, Third-Party Plaintiffs,
v.
Bethlehem Steel Corporation, General Electric Company, and
The William Powell Company, Third-Party Defendants,
Prava CHATTERJEE, Appellant.
 No. 80-1338.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 9, 1980.
Decided Dec. 2, 1980.
 
 Harry Lore (argued), Philadelphia, Pa., for appellant.
 James F. Young, Peter Hansen Bach (argued), Krusen Evans & Byrne, Philadelphia, Pa., for appellees.
 Before SEITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and MEANOR, District Judge.*
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 Mrs. Prava Chatterjee appeals from the district court's denial of her petition to vacate and set aside a settlement and release of her claim relating to her son's maritime death.
 
 I.
 
 2
 Pratik Chatterjee, an Indian crewmember of the S.S. CORINTHOS, was killed on January 31, 1975, when the CORINTHOS exploded after being struck by the S.S. EDGAR M. QUEENY. Within one week of the accident, counsel for the QUEENY instituted in the United States District Court for the Eastern District of Pennsylvania an exoneration from or limitation of liability proceeding pursuant to 46 U.S.C. § 185 (1970). In compliance with Supplemental Rule F(4) of the Federal Rules of Civil Procedure, the district court issued a notice to all persons wishing to assert claims against the QUEENY to file such claims before March 30, 1975, a deadline that was ultimately extended to December 1975. A copy of this notice was mailed to the decedent's last known address in India. A Baton Rouge law firm representing a number of families of the deceased crewmembers filed a timely claim on behalf of the Chatterjee family.
 
 
 3
 It is undisputed that in December 1975, the attorneys who had filed suit on behalf of the Chatterjees and an attorney for the QUEENY flew to India to make final arrangements for certain settlement agreements. In New Delhi, Anil Ranjan Ghosal, Mrs. Chatterjee's son-in-law, accepted the settlement proceeds from an $87,000 settlement and signed a release of all claims relating to Pratik's death. Ghosal was purportedly acting pursuant to a special power of attorney that he claimed was executed in Calcutta by the appropriate family members, including Mrs. Chatterjee, and that appeared to be attested to by an Indian justice of the peace. The validity of the power of attorney and its attestation is contested by the parties.
 
 
 4
 Three-and-one-half years after Ghosal accepted the settlement and signed the release, Mrs. Chatterjee filed a petition in the limitation proceeding, which was still pending in the district court, to set aside the settlement and release. She asserted that her son's death had not been revealed to her until November 1977, that she did not learn of the settlement until May 1978, that she had never retained American counsel or signed the special power of attorney authorizing Ghosal to act on her behalf, and that she was not in India at the time she purportedly signed the power of attorney, having lived in Bangladesh until February 1977. She claimed to be Pratik Chatterjee's sole heir under Indian law. The parties having an interest in the QUEENY asserted three principal defenses: Accord and satisfaction by the release signed by Ghosal, laches, and the statute of limitations. They requested that the district court dismiss the petition.
 
 
 5
 Several months after filing her petition in the limitation proceeding, Mrs. Chatterjee brought a tort action in the Eastern District of Pennsylvania, naming as defendants the QUEENY owners and the attorneys who had participated in the settlement, and asking for damages of $3.25 million. After the tort action was filed, the district court in the limitation proceeding denied Mrs. Chatterjee's petition to set aside and vacate the settlement and release. The court did so without holding an evidentiary hearing, although it had held one conference with the parties, and with no motions before it. It determined that all parties were joined in the tort action, pending before a different judge, and that it would not, therefore, decide the claim in the context of the limitation proceeding. In response to Mrs. Chatterjee's petition for reconsideration, the court indicated that it would decide any issues pertaining to the limitation proceeding only after the tort action was resolved. Mrs. Chatterjee appealed the district court's order denying her petition.
 
 II.
 
 6
 Mrs. Chatterjee's appeal rests on three contentions: First, that the district court's denial of her petition was a decision on the merits, inconsistent with substantive admiralty law; second, that she had a right to an evidentiary hearing, particularly in the absence of a motion to dismiss, before the district court made its decision; and third, that she had a right to have her admiralty claim decided without regard to the tort action. We consider the first two contentions together.
 
 A.
 
 7
 The district court denied Mrs. Chatterjee's petition to vacate and set aside the settlement and release on January 17, 1980. It concluded that:
 
 
 8
 All of the issues which petitioner has raised in her petition have also been raised by her in her complaint filed on September 27, 1979, and which has been assigned to (another judge). The relief she seeks can be obtained in that action and all the parties will be present and all the issues hopefully finally adjudicated or resolved. Thus we consign to that forum and accordingly, deny her petition.
 
 
 9
 No. 75-364 (E.D.Pa. Jan. 17, 1980). When the court subsequently denied Mrs. Chatterjee's motion for reconsideration of the prior order, it said of the tort action:
 
 
 10
 In that forum all the parties will be present and available not only to give whatever testimony and evidence that is germane to the issues to be presented, but that Court will be able to afford the parties all the relief that is indicated.
 
 
 11
 If any further relief is to be provided the parties in this matter, this Court will be available to hear it.
 
 
 12
 No. 75-364 (E.D.Pa. Mar. 7, 1980).
 
 
 13
 As Mrs. Chatterjee contends, some of the language of the January 17, 1980 opinion might be construed as representing a decision on the merits. For example, the court stated that "(t)he defendants had a right to rely upon the special power of attorney," and that "A. R. Ghosal had apparent legal authority to act on behalf of the decedent's family in appointing an attorney to proceed on behalf of the family, and in executing the release." Mrs. Chatterjee argues that this language represents findings made by the district court without an evidentiary hearing, and that her petition was wrongly denied on its merits, with no motion pending before the court.
 
 
 14
 We do not believe, however, that the district court decided this case on the merits. The court did not state that it had ruled on the merits and accordingly we may assume that it did not do so. See Korvettes, Inc. v. Brous, 617 F.2d 1021 (3d Cir. 1980) (per curiam). We do not believe that a district court would have decided the merits of this disputed claim without holding an evidentiary hearing, particularly in the context of admiralty jurisdiction, where summary judgment is often considered an inappropriate procedure to determine the validity of a crewmember's release.[1] See Sagastume v. Lampsis Navigation Ltd., 579 F.2d 222, 224 (2d Cir. 1978). Our assumption that the district court did not decide the merits of this case is strengthened by the existence of another basis for the decisionthe pending tort action. The absence of opportunity for briefing and argument, as well as the existence of another proceeding, persuade us that the district court intended only to defer decision in an effort to control its court calendar and avoid possibly duplicative efforts. Accordingly, we need not decide Mrs. Chatterjee's contentions that the district court erred in denying her petition without holding an evidentiary hearing and with no motions before it, and that the denial was inconsistent with substantive admiralty law. Of course, the language in the opinion not directly related to the docket-control issue, language that might be construed to suggest a decision on the merits, is without legal effect.
 
 B.
 
 15
 Mrs. Chatterjee also contends that the district court erred in deferring to the pending tort action. We are guided in our consideration of this issue by the Supreme Court's recognition that "(a)s between federal district courts ... the general principle is to avoid duplicative litigation." Colorado River Water Conservation District v. United States, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In an appropriate case, therefore, a district court may properly consider the "conservation of judicial resources and comprehensive disposition of litigation," see Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952), quoted in Colorado River Water Conservation District, 424 U.S. at 817, 96 S.Ct. at 1246, and attempt to avoid duplicating a proceeding already pending in a federal district court. It is important, however, that only truly duplicative proceedings be avoided. When the claims, parties, or requested relief differ, deference may not be appropriate. Thus, it is important to examine the natures of Mrs. Chatterjee's petition in the limitation proceeding and the tort action to determine the propriety of denying her petition as a means of avoiding duplicative litigation.
 
 
 16
 The admiralty action in which Mrs. Chatterjee filed her petition to vacate and set aside the settlement and release was an exoneration from or limitation of liability proceeding, filed by those having an interest in the QUEENY. In such a proceeding, the shipowners seek exoneration from liability or, if liability is found to exist, to have it limited to an amount specified by statute. See 46 U.S.C. § 183 (1970). This amount is placed in the control of the court and all those who wish to assert claims against the ship are required to file those claims exclusively in the limitation proceeding, at which time the liability of the shipowners, or their right to limit liability, may be tried. If liability and the right to limit it are found, proof of damage claims and distribution of the fund remain. See 3 Benedict on Admiralty § 12 (1980). When the fund is insufficient for all these claims, the claimants are paid pro rata. See id. § 92.
 
 
 17
 Mrs. Chatterjee's petition sought to have the district court "set aside and vacate the settlement and release entered into on behalf of the late Pratik Kumar Chatterjee and to enter such orders and conduct such further proceeding as under the circumstances herein are meet and proper." Presumably, if the settlement and release were set aside and Mrs. Chatterjee were permitted to enter the proceeding, she would submit proof of her individual claim and receive her share of the fund. Alternatively, she might seek to negotiate her own settlement and release. Of course, even if Mrs. Chatterjee would otherwise be entitled to have her petition granted, the defenses asserted by the shipowners-for example, laches and the statute of limitations-might frustrate her attempt to obtain relief.
 
 
 18
 The tort suit was filed before the court ruled on Mrs. Chatterjee's petition in the limitation proceeding. Mrs. Chatterjee's attorney was apparently concerned that the statute of limitations might bar tort claims against those participating in the settlement before her right to enter the limitation proceeding was determined, and that as a result Mrs. Chatterjee would be left with no remedy for her claim. The tort suit was brought against the attorneys involved in the settlement and the three owners of the QUEENY. In addition to claiming that part of rule F(4) should be declared unconstitutional because it provides inadequate notice to aliens, Mrs. Chatterjee alleged carelessness, negligence, and recklessness in making the settlement with Ghosal. She sought to recover approximately $3.25 million: of this, $2.25 million represented the amount of the claim that had been filed in her son's behalf in the limitation proceeding and $1 million represented exemplary damages. Although Mrs. Chatterjee's complaint named as defendants the three owners of the QUEENY, damages were demanded against only the attorneys.
 
 
 19
 Thus, in the limitation proceeding Mrs. Chatterjee sought vacation of the settlement and release and such unspecified further relief as was "meet and proper." In the tort action, she sought $3.25 million in damages against the attorneys who had negotiated the settlement. Neither the parties nor the requested relief were identical in the two proceedings.
 
 
 20
 Furthermore, although Mrs. Chatterjee invoked admiralty jurisdiction in the tort action, she raised claims involving tort law, to be decided under the court's pendent jurisdiction. The question of legal malpractice, for example, is an issue of tort law, not federal admiralty law: the alleged legal malpractice, although stemming from a settlement made with regard to a maritime tort, would not in itself constitute a maritime tort. Thus the two claims were not of the same nature. It is true that in both proceedings, Mrs. Chatterjee was attacking the validity of the settlement and release, but she made these attacks through different approaches and to achieve potentially different results.
 
 
 21
 In the limitation proceeding, for example, Mrs. Chatterjee's petition might be considered in light of general admiralty principles protective of crewmembers, who are viewed as wards of the court. See, e. g., Garrett v. Moore-McCormack Co., 317 U.S. 239, 246, 63 S.Ct. 246, 251, 87 L.Ed. 239 (1942); note 1, supra (discussing whether protections extend to family of crewmembers). If Mrs. Chatterjee's petition were considered in this light, the shipowners would have the burden of showing that the release was "executed freely, without deception or coercion ... and with full understanding." See Garrett v. Moore-McCormack Co., 317 U.S. at 248, 63 S.Ct. at 252. In the tort action, on the other hand, Mrs. Chatterjee would not only carry the burden of proving legal malpractice, but she would also be required to present expert testimony regarding the appropriate standard of care and the defendants' conformity to it. See Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 480 (3d Cir. 1979). In addition she would have to prove the existence of an attorney-client relationship. See Connelly v. Wolf, Block, Schorr & Solis-Cohen, 463 F.Supp. 914, 918 (E.D.Pa.1978). Furthermore, trial by jury, which is available in cases at common law when the amount in controversy exceeds twenty dollars, is not available as of right in most admiralty cases. See U.S.Const. amend. VII; Fed.R.Civ.P. 38(e); 5 Moore's Federal Practice P 38.35 (1980). These kinds of differences render a docket-control dismissal inappropriate.
 
 
 22
 The considerations discussed above do not exhaust the differences between the two actions. See, e. g., 7A Moore's Federal Practice P .53(3) (1979) (discussing some consequences of invoking admiralty, rather than civil, jurisdiction). They illustrate, however, that the tort action seeking damages from the attorneys participating in the settlement did not duplicate the petition to vacate and set aside the settlement and release. Thus the district court erred in attempting to control its docket by denying Mrs. Chatterjee's petition.
 
 III.
 
 23
 The order of the district court will be vacated and the case remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable H. Curtis Meanor, United States District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 This release was not signed by the crewmember but by one purportedly representing the crewmember's surviving family. It has been held that the strict scrutiny applied to settlements executed by crewmembers, see Garrett v. Moore-McCormack Co., 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239 (1942), extends to settlements made by their relatives. Lewis v. S. S. Baune, 534 F.2d 1115, 1123 (5th Cir. 1976). The QUEENY owners contest the applicability of the strict standard favoring crewmembers. Had Mrs. Chatterjee been permitted to make her arguments to the district court, it would have been required to determine the standard to be applied to this release