STAPLETON, Circuit Judge,
dissenting:
The Court today endorses the proposition that “ Burford ... allows a federal *109 court, in fact urges a federal court, to decline to exercise jurisdiction when adjudication of questions of state law (which can only be done by state courts) may avert the need to delve into constitutional issues like those presented here.” Maj. Op. at 104. Specifically, the Court holds that because plaintiffs “have presented an ‘arbitrary and capricious’ argument to the [state court], review by this court ... would interfere significantly with New Jeb-sey’s efforts to establish arid maintain a coherent automobile insurance regulatory policy.” Maj. Op. at 106.
I do not understand how adjudication of appellants’ due process and equal protection claims will in any way impair New Jersey’s ability to maintain a coherent policy. More fundamentally, however, the propositions the Court today affirms cannot coexist with the well established propositions that (1) “exhaustion [of state remedies] is not a prerequisite to an action under § 1983,” Patsy v. Board of Regents, 457 U.S. 496, 501, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), (2) “the opportunity to avoid decision of a constitutional question does not alone justify abstention by a federal court,” Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), (3) “the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction,” Colorado River, 424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)), (4) “there is ... no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy,” NOPSI v. Council of City of New Orleans, 491 U.S. 350, 363, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (quoting Zablocki v. Redhail, 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)), and (5) “Burford represents an ‘extraordinary and narrow exception to the duty of [a federal court] to adjudicate a controversy properly before it.’ ” Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Accordingly, I respectfully dissent.
I.
The plaintiffs in this case are chiropractors and professional organizations that represent chiropractors both in New Jersey and nationally. They challenge the constitutionality of certain regulations recently promulgated by the New Jersey Department of Banking and Insurance (“DOBI”), pursuant to authority granted in the state’s Automobile Insurance Cost Reduction Act (“AICRA”). The New Jersey legislature enacted AICRA in 1998 in an effort to stem the rising cost of private passenger automobile insurance in the state. To further this objective, AICRA calls for DOBI to promulgate standard professional treatment protocols for the diagnosis and treatment of common automobile injuries.
Pursuant to authority granted in AI-CRA, DOBI has developed regulations which identify six “care paths” associated with back injuries. For each care path, the regulations specify the diagnostic procedures and treatments for which reimbursement will be required from an insurer, without a special showing of medical necessity. Reimbursement for other diagnostic procedures and treatment is required only if they are shown to be medically necessary. The regulations also provide a process for resolving disputes about the medical necessity of care that deviates from or exceeds the degree of care designated in the care paths, culminating in arbitration.
During the period for public comment, the plaintiffs and other health care professionals objected that the “care paths” were “ill-conceived, detrimental to patient care, and dangerous.” With few changes to the proposed regulations relevant to the chiropractors’ concerns, the final regulations were adopted on November 30, 1998, to become operative on March 22, 1999.
*110 Plaintiffs first filed suit in federal court challenging the constitutionality of the regulations. In their First Amended Complaint, they allege that the regulations violate the plaintiffs’ substantive due process, procedural due process, and equal protection rights. In support of their substantive due process claim, plaintiffs assert that “[t]he care paths and arbitration provisions are unreasonable, arbitrary and capricious and do not bear a rational relationship to the legitimate aim of the enabling legislation.” App. at 50. In support of their equal protection claim, plaintiffs insist that “there is no rational basis for prohibiting chiropractors from providing reimbursable care to patients under care paths 2, 4, and 6.” App. at 51. Finally, in support of their procedural due process claim, the complaint alleges that “the arbitration provisions contained in the ... regulations ... deny health care practitioners any practical right to contest the medical treatment judgments of the PIP carriers.” App. at 52. Based on these allegations, plaintiffs requested the District Court to declare the regulations dealing with chiropractic care unconstitutional and to enjoin their implementation insofar as they relate to chiropractic care. The plaintiffs’ federal complaint is thus limited to claims that the final product of the rule making process (i.e., the regulations) is in conflict with the United States Constitution.[1]
Shortly after instituting their federal suit, plaintiffs sought judicial review of the regulations under state law from New Jersey Superior Court’s Appellate Division. They argued that the DOBI, in promulgating the regulations, exceeded the scope of its authority under AICRA. They also attacked the process by which the regulations were developed, arguing, inter alia, that they “were adopted without appropriate consultation with national and state standard setting organizations or the applicable state professional licensing boards.” App. at 86. Consistent with England v. Louisiana State Bd. of Med. Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiffs expressly “reserve[d] their right to pursue federal claims in a previously filed federal court action.” App. at 86.
The District Court abstained on the basis of Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). Plaintiffs ask that we reverse the dismissal of their federal suit and remand this matter to the District Court for further proceedings, including consideration of their application for a preliminary injunction. The DOBI asks that we affirm based on Burford, or, alternatively, on the Railroad Comm’n of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or Colorado River, 424 U.S. 800, 96 S.Ct. 1236, 47 *111 L.Ed.2d 483, abstention doctrines. I would grant the relief that plaintiffs seek.
II.
Because the District Court dismissed plaintiffs’ complaint, we must take their allegations to be true. See Monaghan v. Deakins, 798 F.2d 632 (3d Cir.1986), aff'd in part and vacated in part, 484 U.S. 193, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). In reviewing a District Court’s decision to abstain, the underlying legal questions are subject to plenary review, although the decision to abstain is reviewed for abuse of discretion. “The determination of whether this case falls in the area within which the district court may exercise discretion is therefore a matter of law, reviewable on a plenary basis. Only if we determine that the case falls within this range will we apply an abuse of discretion standard in reviewing the district court’s decision to abstain.” University of Md. v. Peat Marwick Main & Co., 923 F.2d 265, 270 (3d Cir.1991).
III.
I begin with the Supreme Court’s admonition that abstention is the “exception and not the rule” and that a federal court’s obligation to adjudicate claims within its jurisdiction is “virtually unflagging.” University of Md., 923 F.2d at 271, (quoting NOPSI, 491 U.S. at 359). As the Supreme Court recently reiterated, federal courts
have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. [T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction .... The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.
NOPSI, 491 U.S. at 358-59 (quotations and citations omitted).
A District Court may abstain in a case in which it has jurisdiction only if that case falls within one of the four, very narrow, exceptions articulated in Bwrford, Pullman, Younger, and Colorado River. To preserve the general rule, courts have delineated the contours of these limited exceptions and provided specific elements for each. I believe that the majority’s approach unnecessarily blurs the lines dividing the exceptions — most notably between the Bwford and Pullman exceptions — and thereby establishes a precedent that takes a substantial step toward creating the proverbial “exception that swallowed the rule.” I believe that fidelity to the general rule obliging federal courts to exercise their jurisdiction requires a careful analysis of each doctrine’s applicability. That analysis leads me to conclude that none of the abstention exceptions are applicable here.
IV.
The Supreme Court has summarized the Bwrford doctrine as follows:
Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are “difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar”; or (2) where “the exercise of federal review of the question in a case and in similar' cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.”
NOPSI, 491 U.S. at 361.
I agree with my colleagues that timely and adequate state court review has been *112 available to plaintiffs. They have no duty to exhaust their state remedies before pressing forward with their § 1983 claims in the federal court, however, and this is true even though such exhaustion might relieve a federal court of the burden of resolving a constitutional issue in the § 1983 case. See Patsy, 457 U.S. at 515; Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 236-37, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); Marks v. Stinson, 19 F.3d 873, 882 (3d Cir.1994).
The District Court found, and appellees contend, that abstention was appropriate here under the second prong of the Bur-ford doctrine — i.e., because federal review would disrupt state efforts to establish a coherent policy on a matter of substantial public concern.
There is no dispute in this case that the legislative scheme reflected in AICRA and the implementing regulations constitutes a complex regulatory scheme covering a subject matter in which the state has very important interests. It is also indisputable that a federal court declaration in this case that these regulations violate the federal constitution and an injunction preventing their implementation would disrupt this state regulatory scheme. These undisputed facts do not alone make Bmford abstention appropriate, however. “While Burford is concerned with protecting state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process. ...” NOPSI, 491 U.S. at 362. And “there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy.” Zablocki, 434 U.S. at 379-80 n. 5.
Burford is thus not directed to the disruption that comes from a one-time federal declaration that a state program is unconstitutional. As the above quoted portion of NOPSI indicates, it is concerned rather with cases in which a federal court will be called upon to resolve issues involving policy judgments that should be reserved for state officials who gain special competence from administering and developing the regulatory process. As then judge, now Justice Breyer explained in a very similar context in Bath Mem. Hosp. v. Maine Health Care Fin. Comm’n, 853 F.2d 1007 (1st Cir.1988), the threat to which Bmford is directed is an “institutional” one:
Federal courts abstained in Burford, and in similar cases, such as [Alabama Public Serv. Com’n v. S. Ry. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) ] and [Allstate Ins. Co. v. Sabbagh, 603 F.2d 228 (1st Cir.1979)] when they feared that excessive federal court intervention unnecessarily threatened to impede significantly the ongoing administration of a state regulatory system. The threatened interference did not consist merely of the threat that the federal court might declare the entire state system unconstitutional; that sort of risk is present whenever one attacks a state law on constitutional grounds in a federal court. Rather, in our view, abstention in the Bmford line of cases rested upon the threat to the proper administration of a constitutional state regulatory system. The threat was that the federal court might, in the context of the state regulatory scheme, create a parallel, additional, federal, “regulatory review” mechanism, the existence of which would significantly increase the difficulty of administering the state regulatory scheme. It was this special and unusual “institutional threat” that, in our view, led the federal courts to abstain.
To be more specific, in Burford, the plaintiff, invoking diversity jurisdiction, asked a federal court to decide that, as a matter of state law, it was entitled to a state oil permit that would have given it a right to remove oil through its wells from a field where large numbers of other producers also had wells. A state agency, the Texas Railroad Commission, was in charge of deciding just who could withdraw what oil from a commonly drilled field, a highly technical question, *113 and one of great local importance, for the Texas Railroad Commission, through this regulation, sought to impose restrictions on supply that would keep interstate oil prices high.... Because of the need, in terms of both economics and equity, to achieve a consistent set of decisions (and the fact that changing economic conditions could require rapidly changing decisions) the state statute had centralized all judicial review in a single Texas state court. As the Supreme Court pointed out, in these circumstances, the presence of a federal court as an independent forum of review for individual licensing decisions based on a balancing of factually-based local interests created a risk of inconsistency (between diversity cases and others) that could have threatened the viability of the Texas regulatory scheme.
Bath, 853 F.2d at 1013-14 (citations omitted) (emphasis in original).
Here, as in Bath, the “plaintiffs do not seek individualized review of fact ... specific regulatory decision making. To the contrary, they attack the [regulations] as [they are] written.... Review here would not threaten to create in the federal court a parallel regulatory review institution. The risks of interference here seem no greater than those present whenever a federal court decides whether a state regulatory statute is constitutional.” Id. at 1014-15.
If we were to allow the District Court to proceed in this matter, it would be called upon, insofar as the substantive due process and equal protection claims are concerned, to do nothing more (and nothing less) than look at the text of the regulation and ask whether a rational rule maker could possibly conclude that the challenged provisions would in some way serve the legitimate governmental interest identified by the state in response to the challenge. See United States v. Williams, 124 F.3d 411, 422 (3d Cir.1997) (equal protection); Alexander, 114 F.3d at 1406 (substantive due process). This extremely deferential rational basis review is deliberately designed to constrain a federal court from resolving an issue of state policy — if the court can conceive of any rational basis for the policy choice made in the challenged regulatory provision there is no constitutional violation and the ease is over.
With respect to plaintiffs’ procedural due process claim, the District Court would be called upon to determine whether the arbitration process provides a fair opportunity for health care practitioners to contest the medical treatment judgments of the PIP carrier. Again, this would involve examining facially the procedure provided to determine whether it comports with the minimum procedural due process required by the Fourteenth Amendment. See Mathews v. Eldridge, 424 U.S. 319, 325, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). I fail to see how performing this task will in any way “be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.” NOPSI, 491 U.S. at 361.
While the claims in this case and the state proceeding are distinct, they do deal with the same subject matter and it is conceivable that the Appellate Division may consider arguments and issues similar to those that will be involved here. We have clearly held, however, that parallel proceedings dealing with the same subject matter are not a basis for abstention. Marks, 19 F.3d at 881. Burford is implicated only when there are issues that the federal court would have to resolve in the federal proceeding that should be reserved for a state tribunal having special competence to resolve them. The issues here are conventional challenges based on the federal constitution, and the Appellate Division, while as competent, is no more competent than the District Court to resolve those issues.[2]
*114 V.
In Artway v. Attorney Gen. of N.J., 81 F.3d 1235 (3d Cir.1996), we explained Pullman abstention as follows:
Under our jurisprudence, a district court must make three findings in order to justify the Pullman exception to the general rule that federal courts must hear cases properly brought within their jurisdiction. The Court must find (1) that uncertain issues of state law underlie the federal constitutional claims brought in the district court; (2) that the state law issues are amenable to a state court interpretation that would obviate the need for, or substantially nar-róte, adjudication of the federal claim; and (3) that important state policies ivould be disrupted through a federal court’s erroneous construction of state law. If all three factors are present, the federal court must then consider whether abstention is appropriate by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants.
Artway, 81 F.3d at 1270 (citations omitted) (emphasis added).
Thus, Pullman abstention is applicable only in the narrow category of cases in which a federal court will have to determine an uncertain issue of state law in the course of reaching a federal constitutional issue and important state policies would be frustrated should the federal court err in deciding that issue. While DOBI repeats many times in its brief that the federal court here would have to interpret the statute and the regulations, it has not identified a single specific issue of state law that is both unclear and relevant to the issues the federal court has been asked to address. Pullman abstention, accordingly, would be inappropriate here.
Were it true, as the Court suggests, that Burford allows a federal court to decline to exercise jurisdiction whenever a state court’s decision might “avert the need to delve into constitutional issues,” slip op. at 104, Pullman abstention would serve no purpose. One would never need to ask whether there are unclear questions of state law, the resolution of which would be material to the constitutional issues presented in the federal proceeding. Bmford abstention would be appropriate even in the absence of such issues.
VI.
In Frank Russell Co. v. Wellington Mgmt., 154 F.3d 97, 106 (3d Cir.1998), we summarized Younger as “prohibiting]” a “federal court from enjoining an on-going state action” if “(1) there is an on-going state judicial proceeding; (2) the state proceeding implicates an important state interest, and (3) the state proceeding provides an adequate opportunity to raise the constitutional issue.” As we said in Marks, however, “while a proponent of abstention must show [these three circumstances exist], such a showing does not require that the federal court abstain.” Marks, 19 F.3d at 882 (emphasis supplied).
The teachings of Marks are helpful here. First, Marks explains that the key to Younger abstention is not the presence of parallel state proceedings, but rather the likelihood that the federal action will interfere with the ongoing state proceedings. “This is true even in cases where there exists a ‘potential for conflict in the results of adjudications.’ ” Id. at 882 (quoting Colorado River, 424 U.S. at 816). After all, as Marks reminds, “[a] federal plaintiff may pursue parallel actions in the state and federal courts so long as the plaintiff does not seek relief in the federal *115 court that would interfere with the state judicial process.” Id. at 885.
Even though the plaintiffs in Marks sought injunctive relief from the federal court, abstention under Younger was not justified. As we explained,
[Marks was] not a case in which the federal plaintiffs are seeking relief which will in any way impair the ability of the state courts of Pennsylvania to adjudicate anything that is currently before them. When [Marks’] suit was filed, plaintiffs ... had instituted two proceedings challenging the election, both of which were then before the Court of Common Pleas. The federal suit did not directly or indirectly ask, the court for any relief with respect to those state proceedings. The plaintiffs were simply pursuing parallel tracks seeking consistent relief in the federal and state systems.
Id. at 884. The same is true here. Plaintiffs do not seek to enjoin a state judicial proceeding or to enjoin enforcement of a state judicial decree. Younger abstention would thus violate the District Court’s duty to resolve federal claims.
VII.
The “threshold inquiry that must be decided in any Cobrado River abstention case is whether the two actions are ‘parallel.’ ” Ryan v. Johnson, 115 F.3d 193, 196 (3d Cir.1997). If they are not, the District Court lacks the power to abstain. “Generally, cases are parallel when they involve the same parties and claims.” As we explained in Trent v. Dial Med. of Fla., Inc., “it is important that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate.” Trent, 33 F.3d 217, 224 (3d Cir.1994) (quoting Complaint of Bankers Trust Co. v. Chatterjee, 636 F.2d 37, 40 (3d Cir.1980)).
The state and federal proceedings here are not parallel. As I have explained, the state proceeding involves only state law challenges to the regulations, while the federal proceeding involves only federal constitutional issues. As a result, Colorado River abstention is inapposite here.
VIII.
The District Court had an obligation to entertain and resolve plaintiffs’ constitutional claims. It lacked authority to abstain. Accordingly, I would reverse its order of dismissal and remand this case for proceedings, including prompt consideration of plaintiffs’ application for a preliminary injunction.

. In support of their substantive due process claim, plaintiffs, after asserting that the care paths and arbitration provisions are arbitrary and capricious, allege that "the regulations appear to be targeted at restricting chiropractic care to accident victims, and they manifest a bias and bad faith towards chiropractors and accident victims who opt to undergo chiropractic care.” App. at 50. I read this as further explication of the plaintiffs’ facial attack on the regulations. The briefing before us suggests, however, that plaintiffs may wish to argue that the regulations are invalid because the rule makers were motivated by bias towards chiropractors. While it would not change my view as to the propriety of abstention if I believed the District Court would have to delve into the subjective intent of the rule makers, I know of no authority for the proposition that a substantive due process claim permits a federal court, in a case not involving infringement of a fundamental right, to inquire into the motive behind state legislative or regulatory rule making. Where no fundamental right is implicated, a state law comports with substantive due process and must be upheld if it is rationally related to a legitimate governmental interest. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 491, 75 S.Ct. 461, 99 L.Ed. 563 (1955); Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir.1997). Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667 (3d Cir.1991), relied upon by the plaintiffs, dealt with a challenge to a refusal to issue a dance hall license, not with a challenge to rule making.

. The Court distinguishes the closely analogous Bath case on the ground that plaintiffs *114 here “attack [on due process and equal protection grounds] only discrete portions of regulations promulgated by the Commissioner, not the legislature.” Maj. Op. at 111. It fails to explain, however, how adjudication of the constitutional issues here posed to the District Court would be any more disruptive of the state's ability to develop coherent policy than adjudication of the issues presented to the federal court in Bath.