**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, and Gerald Flanagan, Plaintiffs,**

v.

**CREATIVE PLAYTHINGS, LTD., Defendant.**

No. Civ.A.04–CV–3243.

United States District Court, E.D. Pennsylvania.

June 21, 2005.

Iris Santiago Flores, Jacqueline H. McNair, Judith A. O'Boyle, Woody Anglade, Philadelphia, PA, Robert J. Dudash, Robert James Jackson Associates, Springfield, PA for Plaintiffs.

David E. Edwards, White and Williams LLP, Philadelphia, PA, Rodney E. Gould, Rubin Hay and Gould P.C., Framingham, MA, for Defendant.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

## I. INTRODUCTION

Plaintiff Equal Employment Opportunity Commission ("EEOC") brought this action against Creative Playthings, Ltd. ("Creative Playthings") on July 9, 2004, alleging retaliatory firing and other unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). On October 14, 2004, Gerald Flanagan ("Flanagan"), the employee whose termination is the basis for this action, filed a motion to intervene. On October 28, 2004, Flanagan's motion to intervene was granted. On November 4, 2004, Flanagan filed an intervenor complaint, in which he brought claims for wrongful discharge and retaliation under Title VII and the Pennsylvania Human Relations Act ("PHRA"), Pa. Stat. Ann. tit. 43, §§ 951–963 (West 1991 & Supp.2005), along with various state-law claims including trade libel and defamation, interfer-

ence with contracts and business, intentional infliction of mental and emotional distress, and breach of promise. Before me now is Creative Playthings's motion to dismiss the state-law claims in Flanagan's intervenor complaint.

## II. BACKGROUND

The facts as alleged in the complaint are as follows. Creative Playthings is a corporation that is in the general business of manufacturing, distributing, and selling playground swing sets. (Intervenor Compl. ¶¶ 8, 27.) Flanagan was initially hired by Creative Playthings on July 26, 2000 as Store Manager for Creative Playthings's West Chester, Pennsylvania store. (*Id.* at ¶ 9.) Within eight weeks of being hired, Flanagan was promoted to District Manager. (*Id.* at ¶ 10.) This promotion made him responsible for several Creative Playthings's stores in the southeastern Pennsylvania region. (*Id.*) In June 2002, Flanagan was offered a promotion to assume exclusive operation for Creative Playthings's Commercial Division, and he was informed that his salary would be $150,000 per year plus $50,000 or more yearly in commissions or bonuses. (*Id.* at ¶ 11.)

As part of this promotion to the Commercial Division, Flanagan was given the responsibility for recommending two District Managers who would replace him in the southeastern Pennsylvania region. (*Id.* at ¶ 12.) Flanagan recommended Vamar Franklin and Dennis Anderson, both of whom are African–American. (*Id.*) Creative Playthings refused to promote Vamar Franklin and Dennis Anderson as District Managers because of their race, and on July 5, 2002, Creative Playthings proceeded to terminate Flanagan's employment without notice. (*Id.* at ¶ 15–17.)

On or about July 12, 2002, Flanagan filed a charge against Creative Playthings with the EEOC alleging wrongful discharge and violation of and deprivation of his rights under Title VII. (*Id.* at ¶ 4.) In March 2003, Creative Playthings filed a petition for a temporary restraining order alleging that Flanagan violated a non-compete agreement. (*Id.* at ¶ 23(a).) That petition had no legal basis and was dismissed by the court. (*Id.*) Creative Playthings proceeded to pursue an equity action against Flanagan for violation of a non-compete agreement after the petition for a temporary restraining order was dismissed. (*Id.* at ¶ 23(b).) Creative Playthings attacked Flanagan's integrity, character, and reputation. (*Id.* at ¶ 24.) Creative Playthings also intentionally and maliciously made, distributed, and published accusations that Flanagan was untrustworthy and would not pay creditors. (*Id.* at ¶ 25.)

Following its investigation, the EEOC issued a determination that there was cause for finding a Title VII violation. (*Id.* at ¶ 5.) The EEOC then filed the present lawsuit against Creative Playthings on July 9, 2004, alleging violations of Title VII. (Compl. at 1.) On October 14, 2004, Flanagan filed a motion to intervene. On October 26, 2004, Flanagan's motion to intervene was granted, and on November 4, 2004, he filed his intervenor complaint, alleging violations of Title VII, the PHRA, and various state-law causes of action, specifically trade libel and defamation, interference with contract and business, intentional infliction of mental and emotional distress, and breach of promise. (Intervenor Compl. ¶¶ 1, 32.) On November 17, 2004, Creative Playthings filed the motion to dismiss that is currently before me.

## III. STANDARD OF REVIEW

Creative Playthings filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) permits parties to file a motion to

dismiss for "failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). In addition to asserting that Flanagan failed to state claims upon which relief could be granted, Creative Playthings also asserts that the claims in the intervenor complaint are beyond the permissible scope of the claims that plaintiff can bring as an intervenor in the present action. This assertion relates to the court's subject matter jurisdiction over the claims, which is more properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Mortensen v. First Fed. Sav. & Loan Assoc.,* 549 F.2d 884, 891 (3d Cir.1977) (explaining that 12(b)(6) motions necessitate a ruling on the merits while other motions to dismiss deal with procedural defects, and 12(b)(1) motions in particular address the trial court's power to hear the case). Because Creative Playthings's motion to dismiss involves both a non-waivable challenge to subject matter jurisdiction that should be brought pursuant to Rule 12(b)(1), and a challenge to the legal sufficiency of the complaint brought pursuant to Rule 12(b)(6), I will set forth the standard of review for each type of challenge.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the lack of subject matter jurisdiction over a claim. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir.2005) (distinguishing non-jurisdictional issues from jurisdictional issues and holding that only jurisdictional issues should be evaluated under the standard for a Rule 12(b)(1) motion). When a motion to dismiss challenges subject matter jurisdiction, that the court must consider whether or not raised by the defendant, the court must distinguish between "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack

the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen,* 549 F.2d at 891. In ruling on 12(b)(1) motions to dismiss that attack the complaint on its face, "the court must consider the allegations of the complaint as true." [1] *Id.; see also Gould Elecs., Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996). A claim may be dismissed only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## IV. DISCUSSION

■ Flanagan intervenes in this action with claims against defendant under Title VII, the PHRA, and various state-law claims. Creative Playthings does not dispute Flanagan's right to intervene in this Title VII civil action. (Def.'s Mem Law Supp. Mot. Dismiss at 4.) Creative Playthings does, however, dispute the viability of some of Flanagan's claims, specifically the state-law claims for breach of promise, trade libel and defamation, infliction of mental and emotional distress, interference with business relationships, dealings,

---

**1.** All defendant has submitted for the court to consider regarding dismissal is the complaint. Therefore, the analysis of subject matter juris-

diction at this stage of the litigation is necessarily a facial one.

and contracts, and punitive damages. Creative Playthings argues that the court cannot or should not exercise jurisdiction over the subject matter of the complaint and that Flanagan failed to assert claims for which relief can be granted. I will first discuss the jurisdictional concerns as they relate generally to all of the disputed claims. Then I will address each claim specifically to determine whether it is appropriate to exercise jurisdiction over the claim and whether the claim should be dismissed on other grounds.

## A. Overview

Creative Playthings seeks to dismiss Flanagan's state-law claims, other than the claim under the PHRA, on the basis that those claims are outside of the scope of the claims raised by the EEOC in the original complaint. (Def.'s Mem. Law Supp. Mot. Dismiss at 4.)

This court has original jurisdiction pursuant to 28 U.S.C. § 1331 for the claims that arise under federal law[2] and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for related state-law claims. Section 1367 provides as follows:

---

**2.** In addition, 28 U.S.C. § 1343(4) provides that federal district courts have original jurisdiction over civil actions "to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

**3.** The circumstances under which a district court may decline to exercise supplemental jurisdiction over a claim are as follows:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367. Subsection (b) applies to cases in which original jurisdiction "is founded solely on section 1332 of this title [diversity jurisdiction]," and subsection (c) provides only four instances in which district courts may decline to exercise supplemental jurisdiction,[3] none of which apply to the claims in the present case. *Id.* Therefore, the court must exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.*[4]

---

28 U.S.C. 1367(c).

**4.** Section 1367 specifically states that it applies to "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367; *see also Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 161 (3d Cir.1995) (analyzing an intervenor's claim and holding that because the intervenor had satisfied the elements of § 1367 and did not fall within one of the statutory exceptions to the exercise of jurisdiction, "a failure to exercise supplemental jurisdiction over [the intervenor's] claims would be an abuse of discretion"); *Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.,* 391 F.3d 871, 881 (7th Cir.2004) (stating as dicta that, in a suit that has a jurisdictional basis other than diversity, once a party has intervened, that party can invoke supplemental jurisdiction pursuant to § 1367 for non-federal claims).

The Third Circuit has interpreted 28 U.S.C. § 1367 to mean that "a district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact' with the claims that supported the district court's original jurisdiction." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir.2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Accordingly, the exercise of supplemental jurisdiction over Flanagan's state-law claims is appropriate if the state-law claims share a "common nucleus of operative fact" with the underlying federal claim.

The underlying federal claim in the intervenor lawsuit by Flanagan is a Title VII claim that Creative Playthings terminated Flanagan in retaliation for engaging in protected activity. In order to determine whether the various state-law claims share a common nucleus of operative fact with the retaliation claim, it is necessary to look at the facts that are relevant to the retaliation claim. A *prima facie* Title VII retaliation claim[5] includes the following elements: (1) the plaintiff was engaged in protected employee activity, (2) the employer took an adverse employment action at the time of or following the protected activity, and (3) the protected activity and the adverse employment action are causally linked. *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir.2001) (citations omitted). Accordingly, the alleged facts that

will be relevant to the retaliation claim in the present case include (1) facts about plaintiff's protected activity: i.e. facts related to Flanagan's recommendation that two employees who were African–American be promoted and facts related to Flanagan's pursuit of a complaint with the EEOC; (2) facts related to adverse employment action taken by the employer: i.e. facts related to Flanagan's abrupt termination weeks after he recommended the promotion of the two employees and facts related to actions depriving him of future employment opportunities after he was terminated;[6] and (3) facts that would illustrate a causal link between the protected activity and the adverse employment action: i.e. facts demonstrating the presence or absence of legitimate reasons, unrelated to Flanagan's participation in protected activities, for terminating Flanagan or retaliating against Flanagan following his termination. Determining whether Creative Playthings terminated Flanagan for legitimate reasons requires inquiry into Flanagan's performance, and, therefore, facts related to whether Flanagan was offered a promotion and the terms of that offer are relevant to his retaliation claim. In order to determine whether to exercise supplemental jurisdiction over Flanagan's state-law claims, I will examine each count challenged in the motion to dismiss to determine whether it shares a "common nucleus of operative fact" with the retaliation claim.[7] In addition, for each claim over

---

**5.** Title VII provides as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e–2000e–17], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [42 USCS §§ 2000e–2000e–17].

42 U.S.C. § 2000e–3.

**6.** Creative Playthings does not contest the allegation that Flanagan was "additionally retaliated against after pursuing his charge and complaint with the EEOC" (Intervenor Compl. ¶ 30), and, therefore, I will assume without deciding that the facts related to the retaliation following Flanagan's pursuit of his charge and complaint with the EEOC are relevant to the retaliation claim.

**7.** The first two counts listed in Flanagan's complaint are not at issue in the present motion to dismiss.

which the exercise of supplemental jurisdiction is appropriate, I will address Creative Playthings's non-jurisdictional arguments as to the legal sufficiency of the claim.

## B. Viability of Specific Claims

### 1. Third Count—Breach of Promises

#### a. Jurisdiction

The Third Count listed in Flanagan's complaint alleges that Creative Playthings breached its promise to promote Flanagan to operate Creative Playthings's Commercial Division for a salary of $150,000 per year plus $50,000 or more yearly in commissions or bonuses. (Intervenor Compl. ¶¶ 11, 32.) Both this claim and the underlying Title VII claims share a common nucleus of operative fact because they both require investigation of the existence and terms of the alleged promise or contract.[8] Therefore, the exercise of supplemental jurisdiction over this claim is appropriate in the present case.

#### b. 12(b)(6) Grounds to Dismiss

■ Creative Playthings also argues that this count should be dismissed for failure to state a claim because there was no actionable employment contract between Flanagan and Creative Playthings. Creative Playthings notes that Flanagan does not set forth the existence of any written contract (Def. Mem. Law Supp. Mot. Dismiss at 5), but this is unnecessary at this stage of the litigation. *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 127–29 (3d Cir.1997) (analyzing a motion to dismiss in which the statute of frauds was raised as an affirmative defense, and hold-

ing that allegations of the existence of an oral contract will nonetheless preclude dismissal of the complaint if the statute of frauds would not void the contract at issue). Furthermore, Creative Playthings does not argue that Flanagan failed to assert the existence of an oral contract.

Creative Playthings posits that because Flanagan has not demonstrated that there was a contract other than an at-will contract, Flanagan has no claim under Pennsylvania law. Whether there was a contract and whether it was other than an at-will contract, however, is a question of fact not properly addressed at this stage.[9] Flanagan could prove a set of facts consistent with the allegations that would entitle him to relief, and, therefore, the motion to dismiss as to the Third Count is denied.

### 2. Fourth Count—Trade Libel and Defamation

#### a. Jurisdiction

■ The Fourth Count alleges that Creative Playthings carried out trade libel and defamation against Flanagan. (*Id.* at ¶ 33.) This requires investigation of the alleged libelous and defamatory statements, which might overlap with the Title VII investigation as to the reason that Flanagan was fired and would overlap with the Title VII investigation as to retaliatory actions following Flanagan's charge with the EEOC. The exercise of supplemental jurisdiction over this claim is appropriate in the present case because this claim and the Title VII claim share a common nucleus of operative fact.

---

8. The retaliation claim will require an investigation of the alleged promise to promote Flanagan because that is relevant to Flanagan's performance and whether he was terminated for legitimate reasons, as well as whether he was subject to an adverse employment action.

9. While Flanagan's objection to the motion to dismiss appears to be based on the assumption that Flanagan's employment was based on an at-will contract, he does not explicitly make that admission. (Pl.'s Mem. Law Supp. Resp. Def.'s Mot. Dismiss at 6.)

### b. 12(b)(6) Grounds to Dismiss

■ Creative Playthings directs the court's attention to the fact that Flanagan brought a similar trade libel and defamation claim that is currently pending in state court and argues that Flanagan should not be permitted to bring that claim in the present action. As a general rule, a plaintiff may litigate the same issue in both state and federal courts simultaneously. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also Spring City Corp. v. Am. Bldgs., Co.*, 193 F.3d 165, 172 (3d Cir.1999) (citing *Univ. Of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir.1991)). As the Supreme Court pointed out in *Colorado River*, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" by Congress. 424 U.S. at 817, 96 S.Ct. 1236; *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir.1997). Accordingly, the Court determined that there were very limited circumstances in which it would be appropriate for a federal court to defer to pending state court proceedings. *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236; *Ryan*, 115 F.3d at 195.

A federal court may only abstain from exercising jurisdiction when the actions in federal court and state court are "parallel" and when abstention is appropriate based on the factors set forth in *Colorado River* and its progeny. *Ryan*, 115 F.3d at 196. Two cases are generally parallel "when they involve the same parties and claims." *Id.* Although the parties in the present action dispute whether the same claims are involved, I will assume for purposes of this analysis that the cases are parallel. Therefore, the second question is whether there are exceptional circumstances warranting abstention based on the factors the federal court must consider. The decision as to whether to abstain should rest "on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The factors set forth in *Colorado River* and its progeny include the following:

> (1) which court first assumed [*in rem*] jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Spring City Corp.* 193 F.3d at 171. The present case does not involve real property, and there is no inconvenience in the federal forum because Creative Playthings is already involved in the underlying suit by the EEOC in this forum and because Creative Playthings has stores in Southeastern Pennsylvania. Courts have construed the remaining factors very narrowly.

The third factor, avoidance of piecemeal litigation, is only met "when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan*, 115 F.3d at 197–98; *see also Spring City Corp.* 193 F.3d at 172 (holding that *Ryan* represents the applicable law under Third Circuit and Supreme Court precedent). I am aware of no such federal policy regarding the defamation and libel claims at issue in the present case.

The fourth factor, the order in which jurisdiction was obtained, "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand," and, in particular, courts should consider the amount of progress that has been made in each action rather than focusing on the date the complaint was filed. *Moses H.*

*Cone Mem'l Hosp.*, 460 U.S. at 21, 103 S.Ct. 927. According to Creative Playthings, Flanagan began his state court action on or about July 7, 2003, but his amended complaint was not filed until August 19, 2004 (Def. Mot. Dismiss at 8),[10] which is more than a month after the present federal court action was filed on July 9, 2004. Furthermore, the defendants in the state court action objected to the amended complaint, and Creative Playthings represents that as of the date that it filed its motion to dismiss in the present case, November 17, 2004, defendants' objections to the amended complaint were still pending before the state court. (*Id.*) Therefore, it appears that the state court is no further along in addressing the merits of the claim than the federal court, and this factor does not weigh in favor of abstention.

The fifth factor, whether federal or state law controls, has been limited by the Third Circuit as follows: "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Ryan,* 115 F.3d at 199. Because trade libel and defamation claims are governed by state law, this factor is immaterial to the analysis of whether abstention is appropriate in the present case.

The last factor, whether the state court will adequately protect the interests of the parties, has also been limited by the Third Circuit. According to the court in *Ryan,* "the mere fact that the state forum is adequate does not counsel in favor of abstention ... When the state court is adequate ... the factor carries little weight."

*Id.* at 200. In the present case, the state court is an adequate forum, and, therefore, this factor carries little weight.

None of the factors set forth by *Colorado River* and its progeny weigh in favor of abstention in the present case. Furthermore, the balancing of the factors should be "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16, 103 S.Ct. 927. Therefore, *Colorado River* abstention is not appropriate for Flanagan's defamation and libel claims.[11] Likewise, it is not appropriate to stay the claims pending the outcome of the state court proceedings. *Spring City Corp.*, 193 F.3d at 171 (holding that "when a district court relies on the *Colorado River* doctrine to stay a case in federal court because it is duplicative with a state court proceeding, such a stay will generally have the 'practical effect of a dismissal,' by putting a party 'effectively out of [federal] court'").

■ Creative Playthings's final argument is that the defamation and trade libel claims should be dismissed as barred by the statute of limitations. A claim that is barred by a statute of limitations can be dismissed pursuant to a Rule 12(b) motion "when the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Hanna v. United States,* 514 F.2d 1092, 1094 (3d Cir.1975). However, a claim is not properly dismissed pursuant to a Rule 12(b) motion if there is a question of fact as to whether the claim was brought within the statute of limitations. *Id.* at 1095. Flanagan's complaint does not set forth the dates of the alleged inci-

---

10. There was a long delay between the initial summons and the first amended complaint, because the case was removed to federal court and then remanded back to state court. (Def. Mot. Dismiss at 8.) Following the remand, Flanagan filed his complaint, but the case was further delayed because the defen-

dants objected to the complaint and their objections were sustained. (*Id.*)

11. This is my ruling regardless of my speculations at the conference held on October 26, 2004.

dents underlying the trade libel and defamation claims. (Intervenor Compl. ¶¶ 24, 25, 33.) A question of fact remains as to whether Flanagan's claims are barred by the statute of limitations. Therefore, Creative Playthings's motion to dismiss as to the Fourth Count is denied.

### 3. Fifth Count—Infliction of Mental and Emotional Distress and Turmoil

#### a. Jurisdiction

■ The Fifth Count alleges that Creative Playthings subjected Flanagan to mental and emotional distress and turmoil. (*Id.* at ¶ 34.) Although the complaint does not provide detail as to the facts that would support this claim, it could be related to the termination of Flanagan that was allegedly for retaliatory purposes. The mental and emotional distress and turmoil claim could also be related to the facts underlying the defamation and libel claims that may be part of the further retaliation alleged by Flanagan. Assuming that to be true, this claim and the Title VII claim share a common nucleus of operative fact, and the exercise of jurisdiction over this claim is appropriate.

#### b. 12(b)(6) Grounds to Dismiss

■ Creative Playthings also argues that this claim is barred by the statute of limitations, but the complaint does not specify dates for the alleged conduct and further indicates that Creative Playthings continues to subject Flanagan to mental and emotional distress and turmoil. Therefore, questions of fact remain that prevent dismissal on that ground.

■ Creative Playthings asserts that Flanagan has failed to state a claim because the alleged conduct was not sufficiently outrageous to constitute intentional

infliction of emotional distress.[12] Although the Pennsylvania Supreme Court has never expressly recognized a cause of action for intentional infliction of emotional distress, it cited Restatement (Second) of Torts § 46 as setting forth the minimum elements necessary to sustain a cause of action for intentional infliction of emotional distress. *Taylor v. Albert Einstein Med. Ctr.*, 562 Pa. 176, 754 A.2d 650, 652 (2000). According to § 46 the tort of "outrageous conduct causing severe emotional distress" is defined as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts § 46(1). The Pennsylvania Supreme Court has stated that "[c]ases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have presented only the most egregious conduct." *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (1998) (citations omitted). The court in *Hoy* also quoted the Third Circuit approvingly as noting, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quoting *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1988)).

Based on Flanagan's pleadings, issues of fact remain as to whether the alleged conduct was sufficiently outrageous. Because a claim may only be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent

12. Creative Playthings assumes, and Flanagan does not contest this assumption, that Flanagan is asserting a claim of intentional inflic-tion of emotional distress rather than negligent infliction of emotional distress. (Def. Mem. Law Supp. Mot. Dismiss at 12.)

with the allegations," *Swierkiewicz,* 534 U.S. at 514, 122 S.Ct. 992 (citing *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229), it is not appropriate to dismiss this claim.

▪ Furthermore, Creative Playthings argues that Flanagan's claim is preempted by the Pennsylvania Workers' Compensation Act. The Pennsylvania Workers' Compensation Act provides that "[t]he liability of an employer under this act shall be exclusive ... in any action at law or otherwise on account of any injury or death...." Pa. Stat. Ann. tit. 77 § 481 (West 2002). "Injury" is defined in relevant part as "an injury to an [employee] ... arising in the course of his employment and related thereto...." Pa. Stat. Ann. tit. 77 § 411(1) (West 2002). Pennsylvania's Workers' Compensation Act is the exclusive remedy for injuries that are sustained during the course of employment and that are related to the employment, including injuries resulting from intentional or negligent infliction of emotional distress arising out of an employment relationship. *Matczak v. Frankford Candy & Chocolate Co.,* 136 F.3d 933, 940 (3d Cir.1997) (citations omitted). Therefore, insofar as the Fifth Count of Flanagan's intervenor complaint alleges intentional or negligent infliction of emotional distress arising out of his employment relationship with Creative Playthings, this claim is dismissed.

▪ The complaint alleges, however, that the infliction of mental and emotional distress and turmoil has continued. This indicates that the claim refers, not only to the times when Flanagan was an employee of Creative Playthings, but also to times when Flanagan was not an employee of Creative Playthings. A claim by a plaintiff against a former employer for conduct that occurred after the termination of employment and that did not arise out of the course of employment or relate thereto is not preempted by the Pennsylvania Work-

ers' Compensation Act. Pa. Stat. Ann. tit. 77 § 411(1). Therefore, insofar as the Fifth Count of Flanagan's intervenor complaint alleges infliction of emotional distress that did not arise out of the course of Flanagan's employment with Creative Playthings, Creative Playthings's motion to dismiss is denied.

### 4. Sixth Count—Interfering with Business Relationships, Dealings, and Contracts

#### a. Jurisdiction

▪ The Sixth Count alleges that Creative Playthings has interfered with or attempted to interfere with Flanagan's business relationships, dealings, and contracts, and has acted to deprive Flanagan of gainful employment. (*Id.* at ¶ 35.) Although the specific facts that underlie this claim are not explicit, the factual basis for the claim seems to be that Creative Playthings filed a law suit alleging that Flanagan violated a non-compete agreement following Flanagan's termination and that Creative Playthings allegedly attacked Flanagan's integrity, character, and reputation. The facts underlying this claim appear to be related to the facts underlying Flanagan's retaliation claim because Flanagan alleges that Creative Playthings retaliated against him after he filed a complaint with the EEOC. Therefore, the Sixth Count may share a common nucleus of operative fact with Flanagan's Title VII action and should not be dismissed at this time.

#### b. 12(b)(6) Grounds to Dismiss

Creative Playthings also argues that this claim is barred by the statute of limitations, but the complaint does not specify dates for the alleged conduct. Therefore, questions of fact remain that prevent dismissal on that ground, and Creative Play-

things's motion to dismiss as to the Sixth Count is denied.

### 5. Seventh Count—Punitive Damages

#### a. Jurisdiction

The Seventh Count regarding punitive damages is not a distinct claim from the other claims, as discussed in more detail to follow, and, therefore, is based on the same underlying facts.

#### b. 12(b)(6) Grounds to Dismiss

■ Creative Playthings argues that the claim for punitive damages is improper because there is no independent cause of action for punitive damages. While Creative Playthings correctly states that there is no independent cause of action for punitive damages because punitive damages are an element of the damages arising out of the initial cause of action, *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800, 802 (1989) *cited in Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa.2005), this does not require dismissal of the Seventh Count. Flanagan's complaint includes claims that could potentially support a claim for punitive damages, and, therefore, it should not be dismissed for failure to state a claim.[13]

### V. CONCLUSION

For the foregoing reasons, Creative Playthings's motion to dismiss is granted in part and denied in part. It is granted insofar as the Fifth Count of Flanagan's intervenor complaint alleges intentional or negligent infliction of emotional distress arising out of his employment relationship with Creative Playthings, and it is denied as to the remainder of the Fifth Count and denied as to all other counts.

13. It may be that Flanagan should have included his request for punitive damages in the counts setting forth the underlying claims

*ORDER*

**AND NOW** this ___ 21st ___ day of June, 2005, upon consideration of Creative Playthings's motion to dismiss, Flanagan's response, and Creative Playthings's reply, it is ORDERED that the motion to dismiss (Docket # 16) is **GRANTED IN PART** and **DENIED IN PART**.

- It is **GRANTED** as to the portion of the Fifth Count of Flanagan's intervenor complaint alleging infliction of emotional distress arising out of Flanagan's employment relationship with Creative Playthings.
- It is **DENIED** as to the portion of the Fifth Count of Flanagan's intervenor complaint alleging infliction of emotional distress occurring after Flanagan's employment was terminated.
- It is **FURTHER DENIED** as to the Third, Fourth, Sixth, and Seventh Counts of Flanagan's intervenor complaint.

rather than to list it as a separate count, but that is a matter of form that does not need to be addressed in this motion to dismiss.